1 | DARON L. TOOCH (State Bar No. 137269)
JOHN P. MCLOUGHLIN (State Bar No. 271148)
2 | **HOOPER, LUNDY & BOOKMAN, P.C.**
1875 Century Park East, Suite 1600
3 | Los Angeles, California  90067-2517
Telephone: (310) 551-8111
4 | Facsimile: (310) 551-8181
E-Mail:   dtooch@health-law.com
5 | E-Mail:   jmcloughlin@health-law.com

6 | KATHERINE R. MILLER (State Bar No. 247390)
**HOOPER, LUNDY & BOOKMAN, P.C.**
7 | 575 Market Street, Suite 2300
San Francisco, CA  94105
8 | Telephone: (415) 875-8500
Facsimile: (415) 875-8519

9 |

10 | Attorneys for Plaintiff Forest Ambulatory
Surgical Associates, L.P. doing business as Forest
Surgery Center

11 |

*HOOPER, LUNDY & BOOKMAN, P.C.*
*1875 CENTURY PARK EAST, SUITE 1600*
*LOS ANGELES, CALIFORNIA  90067-2517*
*TEL.: (310) 551-8111 • FAX: (310) 551-8181*

12 | ### UNITED STATES DISTRICT COURT

13 | ### NORTHERN DISTRICT OF CALIFORNIA

14 | ### SAN JOSE DIVISION

15 | FOREST AMBULATORY SURGICAL
ASSOCIATES, L.P., doing business as
16 | FOREST SURGERY CENTER,

17 | Plaintiff,

18 | vs.

19 | UNITED HEALTHCARE INSURANCE
COMPANY; UNITEDHEALTH GROUP,
20 | INC.;UNITED HEALTHCARE SERVICES,
INC.; INGENIX, INC.; ABBOTT
21 | LABORATORIES HEALTH CARE PLAN;
ABBOTT LABORATORIES, INC.;
22 | ADVANCED MICRO DEVICES, INC.
COMPREHENSIVE WELFARE PLAN
23 | (A/K/A ADVANCED MICRO DEVICES
HEALTH PLAN); ADVANCED MICRO
24 | DEVICES, INC.; AG NEOVO
TECHNOLOGY CORP. HEALTH
25 | BENEFITS PLAN; AG NEOVO
TECHNOLOGY CORP.; AGILENT
26 | TECHNOLOGIES MEDICAL PLAN;
AGILENT TECHNOLOGIES, INC.;
27 | ALAMEDA-CONTRA COSTA TRANSIT
DISTRICT WELFARE BENEFIT PLAN;
28 | ALAMEDA-CONTRA COSTA TRANSIT

CASE No. CV10-04911 EJD

(Case Assigned for All Purpose to Hon. Edward J. Davila)

**SECOND AMENDED COMPLAINT FOR:**

(1)  **RECOVERY OF BENEFITS UNDER 29 U.S.C. 1132 (a)(1)(B);**
(2)  **BREACH OF FIDUCIARY DUTY UNDER 29 U.S.C. 1132(a)(2);**
(3)  **FULL AND FAIR REVIEW OF CLAIMS UNDER 29 U.S.C. 1132(a)(3);**
(4)  **VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE  SECTION 17200** *et seq.*
(5)  **BREACH OF CONTRACT;**
(6)  **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; AND**
(7)  **SERVICES RENDERED.**

(DEMAND FOR JURY TRIAL)

1102026.4

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1 DISTRICT; AMERIPRISE FINANCIAL
MEDICAL PLAN; AMERIPRISE
2 FINANCIAL, INC.; EMPLOYEE BENEFITS
ADMINISTRATION COMMITTEE OF
3 AMERIPRISE FINANCIAL, INC.;
AMPLAN, THE AMTRAK UNION
4 BENEFITS PLAN; NATIONAL RAILROAD
PASSENGER CORPORATION D/B/A
5 AMTRAK;APPLE INC. HEALTH AND
WELFARE BENEFIT PLAN (A/K/A APPLE
6 MEDICAL PLAN); APPLE INC.;
ARAMARK CORPORATION HEALTH
7 BENEFITS PLAN; ARAMARK
CORPORATION; AT&T UMBRELLA
8 BENEFIT PLAN NO. 1 – AT&T MEDICAL
PLAN (A/K/A AT&T MEDICAL PLAN);
9 AT&T, INC.; AUTOMATIC DATA
PROCESSING, INC. HEALTH BENEFITS
10 PLAN; AUTOMATIC DATA PROCESSING,
INC; AVAGO TECHNOLOGIES HEALTH
11 BENEFITS PLAN; AVAGO
TECHNOLOGIES U.S., INC.; BARNES &
12 NOBLE, INC. HEALTH BENEFITS PLAN;
BARNES & NOBLE, INC.; BEST BUY
13 FLEXIBLE BENEFITS PLAN; BEST BUY
CO., INC.; CADENCE DESIGN SYSTEMS,
14 INC. CHOICE PLUS MEDICAL PLAN
(A/K/A CADENCE MEDICAL PLAN);
15 CADENCE DESIGN SYSTEMS, INC.;
CISCO SYSTEMS, INC. WELFARE
16 BENEFIT PLAN (A/K/A CISCO SYSTEMS,
INC. MEDICAL PLAN, AND CISCO
17 SYSTEMS, INC. RETIREE MEDICAL
ACCESS PLAN); CISCO SYSTEMS, INC.;
18 CNA CHOICE PLUS PREFERRED
PROVIDER ORGANIZATION PLAN;
19 CONTINENTAL CASUALTY COMPANY;
COHERENT, INC. WELFARE BENEFIT
20 PLAN; COHERENT, INC.; COVIDIEN
HEALTH AND WELFARE BENEFITS
21 PLAN; COVIDIEN HEALTH AND
WELFARE BENEFITS COMMITTEE;
22 TYCO HEALTHCARE GROUP LP;
DANAHER CORPORATION HEALTH
23 BENEFITS PLAN; DANAHER
CORPORATION; DELTA ACCOUNT-
24 BASED HEALTHCARE PLAN; DELTA
AIRLINES, INC.; ADMINISTRATIVE
25 COMMITTEE OF DELTA AIRLINES, INC.;
DISCOUNT TIRE/AMERICA'S TIRE CO.
26 (REINALT-THOMAS CORP.) WELFARE
BENEFIT PLAN; DISCOUNT
27 TIRE/AMERICA'S TIRE/DISCOUNT TIRE
DIRECT (REINALT-THOMAS CORP.;
28 UNITEDHEALTHCARE CHOICE PLUS

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  PLAN FOR ECLIPSYS CORPORATION
HEALTH BENEFIT PLAN; ECLIPSYS
2  CORPORATION; ELECTRONIC ARTS
HEALTH AND WELFARE BENEFITS
3  PLAN; ELECTRONIC ARTS, INC.;
FARMERS INSURANCE EXCHANGES
4  HEALTH BENEFITS PLAN; FARMERS
INSURANCE COMPANY, INC.;
5  FLEXTRONICS INTERNATIONAL USA,
INC. WELFARE BENEFIT PLAN;
6  FLEXTRONICS INTERNATIONAL USA,
INC.; FOOTHILL-DE ANZA COMMUNITY
7  COLLEGE DISTRICT WELFARE BENEFIT
PLAN; FOOTHILL-DE ANZA
8  COMMUNITY COLLEGE DISTRICT;
GENERAL DYNAMICS CORPORATION
9  HEALTH AND WELFARE PLAN (A/K/A
GENERAL DYNAMICS CORPORATION
10  PREFERRED ORGANIZATION
UHC CHOICE PLUS PLAN A);GENERAL
11  DYNAMICS CORPORATION;
UNITEDHEALTHCARE CHOICE PLUS
12  PLAN FOR W.W. GRAINGER, INC.; W.W.
GRAINGER, INC.; HEWLETT-PACKARD
13  MEDICAL PLAN; HEWLETT-PACKARD;
HYNIX SEMICONDUCTOR
14  MANUFACTURING OF AMERICA, INC.
WELFARE BENEFIT PLAN; HYNIX
15  SEMICONDUCTOR MANUFACTURING
OF AMERICA, INC.; IBM MEDICAL AND
16  DENTAL BENEFITS PLAN FOR
REGULAR FULL-TIME AND REGULAR
17  PART-TIME EMPLOYEES;
INTERNATIONAL BUSINESS MACHINES
18  CORPORATION; OFFICE OF PLAN
ADMINISTRATOR - IBM RETIREMENT
19  PLANS COMMITTEE; INTERSIL
CORPORATION HEALTH BENEFITS
20  PLAN; INTERSIL CORPORATION;
JOHNSON MATTHEY, INC.; JOHNSON
21  MATTHEY, INC.; KLA-TENCOR
WELFARE BENEFIT PLAN (A/K/A KLA-
22  TENCOR MEDICAL PLAN); KLA-TENCOR
CORPORATION; MAHINDRA SATYAM
23  WELFARE BENEFIT PLAN (A/K/A
WELFARE BENEFIT PLAN OF SATYAM
24  COMPUTER SERVICES); MAHINDRA
SATYAM; THE MCGRAW-HILL
25  COMPANIES, INC. GROUP HEALTH
PLAN; THE MCGRAW-HILL COMPANIES,
26  INC.; MENTOR GRAPHICS
CORPORATION WELFARE BENEFIT
27  PLAN (A/K/A MENTOR GRAPHICS
CORPORATION CHOICE PLUS
28  TRADITIONAL PLAN); MENTOR

GRAPHICS CORPORATION; NCR HEALTHCARE PLAN (A/K/A NCR FLEXIBLE BENEFITS PROGRAM); NCR CORPORATION; NOKIA, INC. HEALTH BENEFITS PLAN; NOKIA, INC.; NOVELLUS EMPLOYEE WELFARE BENEFIT PLAN; NOVELLUS SYSTEMS, INC.; NXP SEMICONDUCTORS WELFARE BENEFIT PLAN; NXP SEMICONDUCTORS USA, INC.; ORACLE CORPORATION FLEXIBLE BENEFITS PLAN; ORACLE CORPORATION; PHILIPS ELECTRONICS NORTH AMERICA CORPORATION GROUP WELFARE BENEFIT PLAN; PHILIPS ELECTRONICS NORTH AMERICA CORPORATION; THE PROCTER & GAMBLE HEALTH CARE PLAN; THE PROCTER & GAMBLE COMPANY; UNITEDHEALTHCARE PPO PLAN FOR QUALCOMM INCORPORATED HEALTH BENEFIT PLAN; SOS STEEL COMPANY, INC. HEALTH BENEFITS PLAN; SOS STEEL COMPANY, INC.; SPANSION COMPREHENSIVE WELFARE PLAN (A/K/A SPANSION CHOICE PLUS MEDICAL PLAN); SPANSION, INC.; SVB FINANCIAL GROUP HEALTH PLAN; SVB FINANCIAL GROUP; SYNOPSYS, INC. WELFARE PLAN; SYNOPSYS, INC.; TARGET CORPORATION HEALTH BENEFITS PLAN; TARGET CORPORATION; THE TURNER CORPORATION HEALTH BENEFITS PLAN; THE TURNER CORPORATION; THERMO-FISHER SCIENTIFIC, INC. MEDICAL PLAN; THERMO-FISHER SCIENTIFIC, INC.; TOSHIBA AMERICA, INC. HEALTH BENEFITS PLAN; TOSHIBA AMERICA, INC.; US AIRWAYS, INC. HEALTH BENEFIT PLAN; US AIRWAYS, INC.; UNITEDHEALTHCARE CHOICE PLUS FOR VERISIGN, INC. HEALTH BENEFITS PLAN; VERISIGN, INC.; WELLS FARGO AND COMPANY HEALTH PLAN (A/K/A WELLS FARGO; UNITEDHEALTHCARE PPO PLAN AND WELLS FARGO UNITEDHEALTHCARE CONSUMER DIRECTED HEALTH PLAN); WELLS FARGO AND COMPANY; WHOLE FOODS MARKET GROUP BENEFIT PLAN; WHOLE FOODS MARKET, INC.; WHOLE FOODS MARKET BENEFITS ADMINISTRATIVE COMMITTEE; WILLIAMS-SONOMA HEALTH AND

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

4

SECOND AMENDED COMPLAINT

1  WELFARE BENEFIT PLAN; WILLIAMS-
   SONOMA, INC.; WIPRO HEALTH AND
2  WELFARE PLAN; WIPRO LTD; and DOES
   1 through 50,
3
                    Defendants.
4

5

6

7          Plaintiff FOREST AMBULATORY SURGICAL ASSOCIATES, L.P. ("FASA"), doing

8  business as Forest Surgery Center, for its Second Amended Complaint against Defendants

9  UNITED HEALTHCARE INSURANCE COMPANY, UNITEDHEALTH GROUP, UNITED

10 HEALTHCARE SERVICES, and INGENIX, INC. (collectively "United" or the "United

11 Defendants"), and against the health plans and plan administrators who contracted with United to

12 administer, adjudicate, price, pay, insure and/or otherwise process or handle the benefit claims

13 submitted by FASA to United, alleges as follows:

14                        **JURISDICTION AND VENUE**

15         1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

16 1331, because the action arises under the laws of the United States; pursuant to 29 U.S.C. §

17 1332(e)(1), because the action seeks to enforce rights under the Employee Retirement Income

18 Security Act ("ERISA"); pursuant to the removal jurisdiction conferred by 28 U.S.C. § 1441; and

19 pursuant to 28 U.S.C. § 1367(a), because the State law claims are so related to the federal claims

20 that they form part of the same case or controversy.

21         2.      This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)

22 because a substantial part of the events or omissions giving rise to the claims alleged herein

23 occurred in this Judicial District, and because one or more of the Defendants conducts a

24 substantial amount of business in this Judicial District; and pursuant to 29 U.S.C. § 1132(e)(2)

25 because it is the Judicial District where the breach took place, and because one or more of the

26 Defendants conducts a substantial amount of business in this Judicial District.

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

## THE PARTIES

3.        Plaintiff FASA, doing business as Forest Surgery Center, is, and at all relevant times was, a California limited partnership with its principal place of business in San Jose, California.

## The United Defendants

4.        FASA is informed and believes that Defendant UnitedHealth Group, Inc. ("UnitedHealth") is a Minnesota corporation with its corporate headquarters located in Minneapolis, Minnesota.  UnitedHealth is one of the largest health insurance carriers in the United States.

5.        FASA is informed and believes that Defendant United HealthCare Services, Inc. ("United HealthCare") is a Minnesota corporation with its corporate headquarters located in Minneapolis, Minnesota. United HealthCare is wholly-owned by UnitedHealth, and serves as UnitedHealth's operating division.  United HealthCare is licensed to conduct insurance operations in California and, on information and belief, every other State in the United States, whether it be under the name United HealthCare or some other operating name.

6.        FASA is informed and believes that Defendant United Healthcare Insurance Company ("UHIC") is a wholly owned and controlled subsidiary of UnitedHealth with its principal place of business in Connecticut.

7.        FASA is informed and believes that Defendant Ingenix, Inc. ("Ingenix") is a Delaware corporation with its corporate headquarters located in Eden Prairie, Minnesota.  Ingenix is a wholly-owned subsidiary of UnitedHealth.

8.        UnitedHealth, United HealthCare, UHIC, and Ingenix will be collectively referred to herein as "United" or the "United Defendants."

## The ERISA Plan Defendants

9.        FASA is informed and believes that Defendant Abbott Laboratories Health Care Plan ("Abbott Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

10.     FASA is informed and believes that Defendant Abbott Laboratories, Inc. ("Abbott") is a Delaware corporation with its corporate headquarters located in Abbott Park, Illinois.  FASA is informed and believes that Abbott is a plan sponsor and/or plan administrator for the Abbott Plan.

11.     FASA is informed and believes that Defendant Advanced Micro Devices, Inc. Comprehensive Welfare Plan (a/k/a Advanced Micro Devices Health Plan) ("AMD Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

12.     FASA is informed and believes that Defendant Advanced Micro Devices, Inc. ("AMD") is a Delaware corporation with its corporate headquarters located in Sunnyvale, California.  FASA is informed and believes that AMD is a plan sponsor and/or plan administrator for the Agilent Plan.

13.     FASA is informed and believes that Defendant AG Neovo Technology Corp. Health Benefits Plan ("AG Neovo Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

14.     FASA is informed and believes that Defendant AG Neovo Technology Corporation ("AG Neovo") is a California corporation with its corporate headquarters located in San Jose, California.  FASA is informed and believes that AG Neovo is a plan sponsor and/or plan administrator for the AG Neovo Plan.

15.     FASA is informed and believes that Defendant Agilent Technologies Medical Plan ("Agilent Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

16.     FASA is informed and believes that Defendant Agilent Technologies, Inc. ("Agilent") is a Delaware corporation with its corporate headquarters located in Santa Clara, California.  FASA is informed and believes that Agilent is a plan sponsor and/or plan administrator for the Agilent Plan.

17.     FASA is informed and believes that Defendant Alameda-Contra Costa Transit District Welfare Benefit Plan ("Alameda Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

18.     FASA is informed and believes that Defendant Alameda-Contra Costa Transit District ("Alameda") is a regional public transit agency with its principal place of business in located in Oakland, California.  FASA is informed and believes that Alameda is a plan sponsor and/or plan administrator for the Alameda Plan.

19.     FASA is informed and believes that Defendant Ameriprise Financial Medical Plan ("Ameriprise Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

20.     FASA is informed and believes that Defendant Ameriprise Financial, Inc. ("Ameriprise") is a Delaware corporation with its corporate headquarters located in Minneapolis, Minnesota.  FASA is informed and believes that Ameriprise is a plan sponsor and/or plan administrator for the Ameriprise Plan.

21.     FASA is informed and believes that Defendant Employee Benefits Administration Committee of Ameriprise Financial, Inc. (Ameriprise Committee) is an administrative unit within Ameriprise.  FASA is informed and believes that Ameriprise Committee is a plan sponsor and/or plan administrator for the Ameriprise Plan.

22.     FASA is informed and believes that Defendant AmPlan, The Amtrak Union Benefits Plan ("Amtrak Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

23.     FASA is informed and believes that Defendant National Railroad Passenger Corporation d/b/a AMTRAK ("Amtrak") is a passenger railroad and corporation of which the United States federal government, through the United States Department of Transportation, owns all issued and outstanding preferred stock.  Amtrak's headquarters are located in Washington, District of Columbia.  FASA is informed and believes that Amtrak is a plan sponsor and/or plan administrator for the Amtrak Plan.

24.     FASA is informed and believes that Defendant Apple Inc. Health and Welfare Benefit Plan (a/k/a Apple Medical Plan) ("Apple Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

25.     FASA is informed and believes that Defendant Apple Inc. ("Apple") is a California corporation with its corporate headquarters located in Cupertino, California.  FASA is informed and believes that Apple is a plan sponsor and/or plan administrator for the Apple Plan.

26.     FASA is informed and believes that Defendant Aramark Corporation Health Benefits Plan ("Aramark Plan") is an ERISA plan capable of being sued under ERISA § 502(d). 29 U.S.C. § 1132(d).

27.     FASA is informed and believes that Defendant Aramark Corporation ("Aramark ") is a Delaware corporation with its corporate headquarters located in Philadelphia, Pennsylvania. FASA is informed and believes that Aramark is a plan sponsor and/or plan administrator for the Aramark Plan.

28.     FASA is informed and believes that Defendant  AT&T Umbrella Benefit Plan No. 1 – AT&T Medical Plan (a/k/a AT&T Medical Plan) ("AT&T Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

29.     FASA is informed and believes that Defendant AT&T, Inc. ("AT&T") is a Delaware corporation with its corporate headquarters located in Dallas, Texas.  FASA is informed and believes that AT&T is a plan sponsor and/or plan administrator for the AT&T Plan.

30.     FASA is informed and believes that Defendant Automatic Data Processing, Inc. Health Benefits Plan ("ADP Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

31.     FASA is informed and believes that Defendant Automatic Data Processing, Inc ("ADP ") is a Delaware corporation with its corporate headquarters located in Roseland, New Jersey.  FASA is informed and believes that ADP is a plan sponsor and/or plan administrator for the ADP Plan.

32.     FASA is informed and believes that Defendant Avago Technologies Health Benefits Plan ("Avago Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

33.     FASA is informed and believes that Defendant Avago Technologies U.S., Inc. ("Avago ") is a Delaware corporation with its corporate headquarters located in San Jose,

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

California.  FASA is informed and believes that Avago is a plan sponsor and/or plan administrator for the Avago Plan.

34.     FASA is informed and believes that Defendant Barnes & Noble, Inc. Health Benefits Plan ("Barnes & Noble Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

35.     FASA is informed and believes that Defendant Barnes & Noble, Inc. ("Barnes & Noble ") is a Delaware corporation with its corporate headquarters located in New York, New York.  FASA is informed and believes that Barnes & Noble is a plan sponsor and/or plan administrator for the Barnes & Noble Plan.

36.     FASA is informed and believes that Defendant Best Buy Flexible Benefits Plan ("Best Buy Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

37.     FASA is informed and believes that Defendant Best Buy Co., Inc. ("Best Buy ") is a Minnesota corporation with its corporate headquarters located in Richfield, Minnesota.  FASA is informed and believes that Best Buy is a plan sponsor and/or plan administrator for the Best Buy Plan.

38.     FASA is informed and believes that Defendant Cadence Design Systems, Inc. Choice Plus Medical Plan (a/k/a Cadence Medical Plan) ("Cadence Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

39.     FASA is informed and believes that Defendant Cadence Design Systems, Inc. ("Cadence") is a  Delaware corporation with its corporate headquarters located in San Jose, California.  FASA is informed and believes that Cadence is a plan sponsor and/or plan administrator for the Cadence Plan.

40.     FASA is informed and believes that Defendant Cisco Systems, Inc. Welfare Benefit Plan (a/k/a Cisco Systems, Inc. Medical Plan, and Cisco Systems, Inc. Retiree Medical Access Plan) ("Cisco Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

41.     FASA is informed and believes that Defendant Cisco Systems, Inc. ("Cisco ") is a California corporation with its corporate headquarters located in San Jose, California.  FASA is informed and believes that Cisco is a plan sponsor and/or plan administrator for the Cisco Plan.

42.     FASA is informed and believes that Defendant CNA Choice Plus Preferred Provider Organization Plan ("CNA Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

43.     FASA is informed and believes that Defendant Continental Casualty Company ("Continental ") is an Illinois corporation with its corporate headquarters located in Chicago, Illinois.  FASA is informed and believes that Continental is a plan sponsor and/or plan administrator for the CNA Plan.

44.     FASA is informed and believes that Defendant Coherent, Inc. Welfare Benefit Plan ("Coherent Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

45.     FASA is informed and believes that Defendant Coherent, Inc. ("Coherent ") is a Delaware corporation with its corporate headquarters located in Santa Clara, California.  FASA is informed and believes that Coherent is a plan sponsor and/or plan administrator for the Coherent Plan.

46.     FASA is informed and believes that Defendant Covidien Health and Welfare Benefits Plan ("Covidien Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

47.     FASA is informed and believes that Defendant Covidien Health and Welfare Benefits Committee ("Covidien Committee ") is an administrative unit within Covidien, Inc., which is a Delaware corporation with its corporate headquarters located in Mansfield, Massachusetts.  FASA is informed and believes that Covidien Committee is a plan sponsor and/or plan administrator for the Covidien Plan.

48.     FASA is informed and believes that Defendant Tyco Healthcare Group LP ("Tyco") is a Delaware limited partnership with its headquarters located in Mansfield,

1   Massachusetts. FASA is informed and believes that Tyco is a plan sponsor and/or plan

2   administrator for the Covidien Plan.

3       49.     FASA is informed and believes that Defendant Danaher Corporation Health

4   Benefits Plan ("Danaher Plan") is an ERISA plan capable of being sued under ERISA § 502(d).

5   29 U.S.C. § 1132(d).

6       50.     FASA is informed and believes that Defendant Danaher Corporation ("Danaher ")

7   is a Delaware corporation with its corporate headquarters located in Mayfield Heights, Ohio.

8   FASA is informed and believes that Danaher is a plan sponsor and/or plan administrator for the

9   Danaher Plan.

10      51.     FASA is informed and believes that Defendant Delta Account-Based Healthcare

11  Plan ("Delta Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. §

12  1132(d).

13      52.     FASA is informed and believes that Defendant Delta Airlines, Inc. ("Delta ") is a

14  Delaware corporation with its corporate headquarters located in Atlanta, Georgia.  FASA is

15  informed and believes that Delta is a plan sponsor and/or plan administrator for the Delta Plan.

16      53.     FASA is informed and believes that Defendant Administrative Committee of Delta

17  Airlines, Inc. ("Delta Committee ") is an administrative unit within Delta.  FASA is informed and

18  believes that Delta Committee is a plan sponsor and/or plan administrator for the Delta Plan.

19      54.     FASA is informed and believes that Defendant Discount Tire/America's Tire Co.

20  (Reinalt-Thomas Corp.) Welfare Benefit Plan ("Discount Tire Plan") is an ERISA plan capable of

21  being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

22      55.     FASA is informed and believes that Defendant Discount Tire/America's

23  Tire/Discount Tire Direct (Reinalt-Thomas Corp.)  ("Discount Tire") is a Michigan corporation

24  with its corporate headquarters located in Scottsdale, Arizona.  FASA is informed and believes

25  that Discount Tire is a plan sponsor and/or plan administrator for the Discount Tire Plan.

26      56.     FASA is informed and believes that Defendant UnitedHealthcare Choice Plus Plan

27  for Eclipsys Corporation Health Benefit Plan ("Eclipsys Plan") is an ERISA plan capable of being

28  sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

57.     FASA is informed and believes that Defendant Eclipsys Corporation ("Eclipsys") is a Delaware corporation with its corporate headquarters located in Atlanta, Georgia.  FASA is informed and believes that Eclipsys is a plan sponsor and/or plan administrator for the Eclipsys Plan.

58.     FASA is informed and believes that Defendant Electronic Arts Health and Welfare Benefits Plan ("Electronic Arts Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

59.     FASA is informed and believes that Defendant Electronic Arts, Inc. ("Electronic Arts") is a Delaware corporation with its corporate headquarters located in Redwood City, California.  FASA is informed and believes that Electronic Arts is a plan sponsor and/or plan administrator for the Electronic Arts Plan.

60.     FASA is informed and believes that Defendant Farmers Insurance Exchanges Health Benefits Plan ("Farmers Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

61.     FASA is informed and believes that Defendant Farmers Insurance Company, Inc. ("Farmers") is a Kansas corporation with its corporate headquarters located in Olathe, Kansas. FASA is informed and believes that Farmers is a plan sponsor and/or plan administrator for the Farmers Plan.

62.     FASA is informed and believes that Defendant Flextronics International USA, Inc. Welfare Benefit Plan ("Flextronics Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

63.     FASA is informed and believes that Defendant Flextronics International USA, Inc. ("Flextronics ") is a California corporation with its corporate headquarters located in Milpitas, California.  FASA is informed and believes that Flextronics is a plan sponsor and/or plan administrator for the Flextronics Plan.

64.     FASA is informed and believes that Defendant General Dynamics Corporation Health and Welfare Plan (a/k/a General Dynamics Corporation Preferred Provider Organization

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   UHC Choice Plus Plan A) ("General Dynamics Plan") is an ERISA plan capable of being sued

2   under ERISA § 502(d).  29 U.S.C. § 1132(d).

3        65.    FASA is informed and believes that Defendant General Dynamics Corporation

4   ("General Dynamics") is a Delaware corporation with its corporate headquarters located in West

5   Falls Church, Virginia.  FASA is informed and believes that General Dynamics is a plan sponsor

6   and/or plan administrator for the General Dynamics Plan.

7        66.    FASA is informed and believes that Defendant UnitedHealthcare Choice Plus Plan

8   for W.W. Grainger, Inc. ("Grainger Plan") is an ERISA plan capable of being sued under ERISA §

9   502(d).  29 U.S.C. § 1132(d).

10       67.    FASA is informed and believes that Defendant W.W. Grainger, Inc. ("Grainger ")

11  is an Illinois corporation with its corporate headquarters located in Lake Forest, Illinois.  FASA is

12  informed and believes that Grainger is a plan sponsor and/or plan administrator for the Grainger

13  Plan.

14       68.    FASA is informed and believes that Defendant Hewlett-Packard Medical Plan

15  ("Hewlett-Packard Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29

16  U.S.C. § 1132(d).

17       69.    FASA is informed and believes that Defendant Hewlett-Packard Company

18  ("Hewlett-Packard") is a Delaware corporation with its corporate headquarters located in Palo

19  Alto, California.  FASA is informed and believes that Hewlett-Packard is a plan sponsor and/or

20  plan administrator for the Hewlett-Packard Plan.

21       70.    FASA is informed and believes that Defendant Hynix Semiconductor

22  Manufacturing of America, Inc. Welfare Benefit Plan ("Hynix Plan") is an ERISA plan capable of

23  being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

24       71.    FASA is informed and believes that Defendant Hynix Semiconductor

25  Manufacturing of America, Inc. ("Hynix ") is a California corporation with its corporate

26  headquarters located in San Jose, CA.  FASA is informed and believes that Hynix is a plan

27  sponsor and/or plan administrator for the Hynix Plan.

28

72.     FASA is informed and believes that Defendant IBM Medical and Dental Benefits Plan for Regular Full-time and Regular Part-time Employees ("IBM Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

73.     FASA is informed and believes that Defendant International Business Machines Corporation ("IBM ") is a New York corporation with its corporate headquarters located in Armonk, New York.  FASA is informed and believes that IBM is a plan sponsor and/or plan administrator for the IBM Plan.

74.     FASA is informed and believes that Office of Plan Administrator  - IBM Retirement Plans Committee ("IBM Committee") is an administrative unit within IBM.  FASA is informed and believes that IBM Committee is a plan sponsor and/or plan administrator for the IBM Plan.

75.     FASA is informed and believes that Defendant Intersil Corporation Health Benefits Plan ("Intersil Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

76.     FASA is informed and believes that Defendant Intersil Corporation ("Intersil") is a Delaware corporation with its corporate headquarters located in Palm Bay, Florida.  FASA is informed and believes that Intersil is a plan sponsor and/or plan administrator for the Intersil Plan.

77.     FASA is informed and believes that Defendant Johnson Matthey, Inc. Health Benefits Plan ("Johnson Matthey Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

78.     FASA is informed and believes that Defendant Johnson Matthey, Inc. ("Johnson Matthey") is a Pennsylvania corporation with its corporate headquarters located in Wayne, Pennsylvania, and a wholly-owned subsidiary of Johnson Matthey Plc.  FASA is informed and believes that Johnson Matthey is a plan sponsor and/or plan administrator for the Johnson Matthey Plan.

79.     FASA is informed and believes that Defendant KLA-Tencor Welfare Benefit Plan (a/k/a KLA-Tencor Medical Plan) ("KLA-Tencor Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1    80.    FASA is informed and believes that Defendant KLA-Tencor Corporation ("KLA-

2  Tencor ") is a Delaware corporation with its corporate headquarters located in Milpitas, California.

3  FASA is informed and believes that KLA-Tencor is a plan sponsor and/or plan administrator for

4  the KLA-Tencor Plan.

5    81.    FASA is informed and believes that Defendant Mahindra Satyam Welfare Benefit

6  Plan (a/k/a Welfare Benefit Plan of Satyam Computer Services) ("Mahindra Plan") is an ERISA

7  plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

8    82.    FASA is informed and believes that Defendant Mahindra Satyam ("Mahindra") is a

9  corporation organized and existing under the laws of the Republic of India, with its corporate

10  headquarters located in Hyderabad, India.  Mahindra is  registered to do business in California as

11  Satyam Computer Services Limited, with its principal place of business located in Cerritos,

12  California.  FASA is informed and believes that Mahindra is a plan sponsor and/or plan

13  administrator for the Mahindra Plan.

14    83.    FASA is informed and believes that Defendant The McGraw-Hill Companies, Inc.

15  Group Health Plan ("McGraw-Hill Plan") is an ERISA plan capable of being sued under ERISA §

16  502(d).  29 U.S.C. § 1132(d).

17    84.    FASA is informed and believes that Defendant The McGraw-Hill Companies, Inc.

18  ("McGraw-Hill") is a New York corporation with its corporate headquarters located in New York,

19  New York.  FASA is informed and believes that McGraw-Hill is a plan sponsor and/or plan

20  administrator for the McGraw-Hill Plan.

21    85.    FASA is informed and believes that Defendant Mentor Graphics Corporation

22  Welfare Benefit Plan (a/k/a Mentor Graphics Corporation Choice Plus Traditional Plan) ("Mentor

23  Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

24    86.    FASA is informed and believes that Defendant Mentor Graphics Corporation

25  ("Mentor ") is an Oregon corporation with its corporate headquarters located in Wilsonville,

26  Oregon.  FASA is informed and believes that Mentor is a plan sponsor and/or plan administrator

27  for the Mentor Plan.

28

87.     FASA is informed and believes that Defendant NCR Healthcare Plan (a/k/a NCR Flexible Benefits Program) ("NCR Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

88.     FASA is informed and believes that Defendant NCR Corporation ("NCR ") is a Maryland corporation with its corporate headquarters located in Duluth, Georgia.  FASA is informed and believes that NCR is a plan sponsor and/or plan administrator for the NCR Plan.

89.     FASA is informed and believes that Defendant Nokia, Inc. Health Benefits Plan ("Nokia Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

90.     FASA is informed and believes that Defendant Nokia, Inc. ("Nokia") is a Delaware corporation with its corporate headquarters located in Irving, Texas.  FASA is informed and believes that Nokia is a plan sponsor and/or plan administrator for the Nokia Plan.

91.     FASA is informed and believes that Defendant Novellus Employee Welfare Benefit Plan ("Novellus Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

92.     FASA is informed and believes that Defendant Novellus Systems, Inc. ("Novellus") is a California corporation with its corporate headquarters located in San Jose.  FASA is informed and believes that Novellus is a plan sponsor and/or plan administrator for the Novellus Plan.

93.     FASA is informed and believes that Defendant NXP Semiconductors Welfare Benefit Plan ("NXP Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

94.     FASA is informed and believes that Defendant NXP Semiconductors USA, Inc.("NXP") is a Delaware corporation with its corporate headquarters located in San Jose.  FASA is informed and believes that NXP is a plan sponsor and/or plan administrator for the NXP Plan.

95.     FASA is informed and believes that Defendant Oracle Corporation Flexible Benefits Plan ("Oracle Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

96.     FASA is informed and believes that Defendant Oracle Corporation ("Oracle ") is a Delaware corporation with its corporate headquarters located in Redwood Shores, California. FASA is informed and believes that Oracle is a plan sponsor and/or plan administrator for the Oracle Plan.

97.     FASA is informed and believes that Defendant Philips Electronics North America Corporation Group Welfare Benefit Plan ("Philips Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

98.     FASA is informed and believes that Defendant Philips Electronics North America Corporation ("Philips") is a Delaware corporation with its corporate headquarters located in Andover, Massachusetts.  FASA is informed and believes that Philips is a plan sponsor and/or plan administrator for the Philips Plan.

99.     FASA is informed and believes that Defendant The Procter & Gamble Health Care Plan ("Proctor & Gamble Plan") is an ERISA plan capable of being sued under ERISA § 502(d). 29 U.S.C. § 1132(d).

100.     FASA is informed and believes that Defendant The Procter & Gamble Company ("Proctor & Gamble ") is an Ohio corporation with its corporate headquarters located in Cincinnati, Ohio. FASA is informed and believes that Proctor & Gamble is a plan sponsor and/or plan administrator for the Proctor & Gamble Plan.

101.     FASA is informed and believes that Defendant UnitedHealthcare PPO Plan for Qualcomm Incorporated Health Benefit Plan ("Qualcomm Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

102.     FASA is informed and believes that Defendant Qualcomm Incorporated ("Qualcomm ") is a Delaware corporation with its corporate headquarters located in San Diego, California.  FASA is informed and believes that Qualcomm is a plan sponsor and/or plan administrator for the Qualcomm Plan.

103.     FASA is informed and believes that Defendant SOS Steel Company, Inc. Health Benefits Plan ("SOS Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

104.  FASA is informed and believes that Defendant SOS Steel Company, Inc. ("SOS") is a California corporation with its corporate headquarters located in Santa Clara, California. FASA is informed and believes that SOS is a plan sponsor and/or plan administrator for the SOS Plan.

105.  FASA is informed and believes that Defendant Spansion Comprehensive Welfare Plan (a/k/a Spansion Choice Plus Medical Plan) ("Spansion Plan") is an ERISA plan capable of being sued under ERISA § 502(d). 29 U.S.C. § 1132(d).

106.  FASA is informed and believes that Defendant Spansion, Inc. ("Spansion") is a Delaware corporation with its corporate headquarters located in Sunnyvale, California. FASA is informed and believes that Spansion is a plan sponsor and/or plan administrator for the Spansion Plan.

107.  FASA is informed and believes that Defendant SVB Financial Group Health Plan ("SVB Plan") is an ERISA plan capable of being sued under ERISA § 502(d). 29 U.S.C. § 1132(d).

108.  FASA is informed and believes that Defendant SVB Financial Group ("SVB") is a Delaware corporation with its corporate headquarters located in Santa Clara, California. FASA is informed and believes that SVB is a plan sponsor and/or plan administrator for the SVB Plan.

109.  FASA is informed and believes that Defendant Synopsys, Inc. Welfare Plan ("Synopsys Plan") is an ERISA plan capable of being sued under ERISA § 502(d). 29 U.S.C. § 1132(d).

110.  FASA is informed and believes that Defendant Synopsys, Inc. ("Synopsys") is a Delaware corporation with its corporate headquarters located in Mountain View, California. FASA is informed and believes that Synopsys is a plan sponsor and/or plan administrator for the Synopsys Plan.

111.  FASA is informed and believes that Defendant Target Corporation Health Benefits Plan ("Target Plan") is an ERISA plan capable of being sued under ERISA § 502(d). 29 U.S.C. § 1132(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1    112.    FASA is informed and believes that Defendant Target Corporation ("Target") is a

2  Minnesota corporation with its corporate headquarters located in Minneapolis, Minnesota.  FASA

3  is informed and believes that Target is a plan sponsor and/or plan administrator for the Target

4  Plan.

5    113.    FASA is informed and believes that Defendant The Turner Corporation Health

6  Benefits Plan ("Turner Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29

7  U.S.C. § 1132(d).

8    114.    FASA is informed and believes that Defendant The Turner Corporation ("Turner")

9  is a Delaware corporation with its corporate headquarters located in New York, New York.  FASA

10  is informed and believes that Turner is a plan sponsor and/or plan administrator for the Turner

11  Plan.

12    115.    FASA is informed and believes that Defendant Thermo-Fisher Scientific, Inc.

13  Medical Plan ("Thermo-Fisher Plan") is an ERISA plan capable of being sued under ERISA §

14  502(d).  29 U.S.C. § 1132(d).

15    116.    FASA is informed and believes that Defendant Thermo-Fisher Scientific, Inc.

16  ("Thermo Fisher ") is a Delaware corporation with its corporate headquarters located in Waltham,

17  Massachusetts.  FASA is informed and believes that Thermo Fisher is a plan sponsor and/or plan

18  administrator for the Thermo Fisher Plan.

19    117.    FASA is informed and believes that Defendant Toshiba America, Inc. Health

20  Benefits Plan ("Toshiba Plan") is an ERISA plan capable of being sued under ERISA § 502(d).

21  29 U.S.C. § 1132(d).

22    118.    FASA is informed and believes that Defendant Toshiba America, Inc. ("Toshiba ")

23  is a Delaware corporation with its corporate headquarters located in New York, New York.  FASA

24  is informed and believes that Toshiba is a plan sponsor and/or plan administrator for the Toshiba

25  Plan.

26    119.    FASA is informed and believes that Defendant US Airways, Inc. Health Benefit

27  Plan ("US Airways Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29

28  U.S.C. § 1132(d).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

120.    FASA is informed and believes that Defendant US Airways, Inc. ("US Airways") is a Delaware corporation with its corporate headquarters located in Tempe, Arizona.  FASA is informed and believes that US Airways is a plan sponsor and/or plan administrator for the US Airways Plan.

121.    FASA is informed and believes that Defendant UnitedHealthcare Choice Plus for Verisign, Inc. Health Benefits Plan ("Verisign Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

122.    FASA is informed and believes that Defendant Verisign, Inc. ("Verisign") is a Delaware corporation with its corporate headquarters located in Dulles, Virginia.  FASA is informed and believes that Verisign is a plan sponsor and/or plan administrator for the Verisign Plan.

123.    FASA is informed and believes that Defendant Wells Fargo and Company Health Plan (a/k/a Wells Fargo UnitedHealthcare PPO Plan and Wells Fargo UnitedHealthcare Consumer Directed Health Plan) ("Wells Fargo Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

124.    FASA is informed and believes that Defendant Wells Fargo and Company ("Wells Fargo") is a Delaware corporation with its corporate headquarters located in San Francisco, California.  FASA is informed and believes that Wells Fargo is a plan sponsor and/or plan administrator for the Wells Fargo Plan.

125.    FASA is informed and believes that Defendant Whole Foods Market Group Benefit Plan ("Whole Foods Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. § 1132(d).

126.    FASA is informed and believes that Defendant Whole Foods Market, Inc. ("Whole Foods ") is a Delaware corporation with its corporate headquarters located in Austin, Texas.  FASA is informed and believes that Whole Foods is a plan sponsor and/or plan administrator for the Whole Foods Plan.

127.    FASA is informed and believes that Defendant Whole Foods Market Benefits Administrative Committee ("Whole Foods Committee") is an administrative Unit of Whole

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  Foods.  FASA is informed and believes that Whole Foods is a plan sponsor and/or plan

2  administrator for the Whole Foods Plan.

3       128.  FASA is informed and believes that Defendant Williams-Sonoma Health and

4  Welfare Benefit Plan ("Williams-Sonoma Plan") is an ERISA plan capable of being sued under

5  ERISA § 502(d).  29 U.S.C. § 1132(d).

6       129.  FASA is informed and believes that Defendant Williams-Sonoma, Inc. ("Williams-

7  Sonoma ") is a Delaware corporation with its corporate headquarters located in Sacramento,

8  California.  FASA is informed and believes that Williams-Sonoma is a plan sponsor and/or plan

9  administrator for the Williams-Sonoma Plan.

10       130.  FASA is informed and believes that Defendant Wipro Health and Welfare Plan

11  ("Wipro Plan") is an ERISA plan capable of being sued under ERISA § 502(d).  29 U.S.C. §

12  1132(d).

13       131.  FASA is informed and believes that Defendant Wipro LTD ("Wipro") is a

14  corporation organized and existing under the laws of the Republic of India with its corporate

15  headquarters located in Bangalore, India. Wipro is registered to conduct business in California,

16  with its principal place of business in the United States in East Brunswick, New Jersey.  FASA is

17  informed and believes that Wipro is a plan sponsor and/or plan administrator for the Wipro Plan.

18       132.  The defendants identified in paragraphs 9 through 131, together with such DOE

19  Defendants, as defined below, that are ERISA plans capable of being sued under ERISA § 502(d),

20  or are plan sponsors and/or plan administrators for such ERISA plans, will be referred to herein

21  collectively as the "ERISA Plan Defendants."

22                   **The Non-ERISA Plan Defendants**

23       133.  FASA is informed and believes that Defendant Foothill-De Anza Community

24  College District Welfare Benefit Plan (a/k/a Foothill-De Anza Community College District

25  Medical Plan) ("Foothill Plan") is a health benefit plan that is not governed by ERISA.

26       134.  FASA is informed and believes that Defendant Foothill-De Anza Community

27  College District ("Foothill") is a public community college district within the California

28  Community Colleges system, and serves the communities of Cupertino, Los Altos, Los Altos

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  Hills, Mountain View, Palo Alto, Stanford, Sunnyvale, and portions of San Jose, with its district

2  offices located in Los Altos Hills, California.  FASA is informed and believes that Foothill is a

3  plan sponsor and/or plan administrator for the Foothill Plan.

4      135.    The defendants identified in paragraphs 133 through 134, together with such DOE

5  Defendants, as defined below, that are health benefit plans that are not governed by ERISA, or are

6  plan sponsors and/or plan administrators for such health benefit plans, will be referred to herein

7  collectively as the "Non-ERISA Plan Defendants."

8  **The DOE Defendants and Amendment**

9      136.    The true names and capacities of the defendants sued herein as DOES 1 through 50

10  (the "DOE Defendants") are unknown to FASA at this time, and FASA therefore sues such

11  defendants by such fictitious names.   FASA is informed and believes that the DOE Defendants

12  are those individuals, corporations and/or businesses or other entities that are also in some fashion

13  legally responsible for the actions, events and circumstances complained of herein, and may be

14  financially responsible to FASA for the services FASA has provided, as alleged herein.  This

15  complaint will be amended to allege the DOE Defendants' true names and capacities when they

16  have been ascertained.

17      137.    The United Defendants, the ERISA Plan Defendants, the Non-ERISA Plan

18  Defendants, and the DOE Defendants will be collectively referred to herein as the "Defendants."

19      138.    FASA has not had the opportunity to conduct discovery of all of the applicable plan

20  documents relevant to this litigation, including those documents that disclose the official names of

21  several of the plans at issue and the identities of several of the plan sponsors and designated plan

22  administrators.  Accordingly, FASA will amend the allegations as to the named defendants, to the

23  extent necessary, as such documentation and information becomes available and known to FASA.

24  **AGENCY**

25      139.    FASA is informed and believes that the United Defendants have entered into

26  administrative service agreements or other contracts with the ERISA Plan Defendants and the

27  Non-ERISA Plan Defendants whereby the United Defendants have agreed to act as agents of the

28  ERISA Plan Defendants and of the Non-ERISA Plan Defendants, and have actual or ostensible

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   authority to act on their behalf for: providing plan documents to plan members; communicating

2   with plan members and healthcare providers, such as FASA; verifying member benefits and

3   eligibility to providers, such as FASA; interpreting plan terms and provisions; receiving FASA's

4   claims; pricing FASA's claims; processing and administering FASA's claims and appeals;

5   approving or denying FASA's claims and appeals; determining whether and how to pay FASA's

6   claims; issuing remittance advices, claim status reports and explanations of benefits; and making

7   and administering payments.  With respect to every claim at issue in this case, FASA dealt directly

8   with United, submitted the claims for reimbursement to United, communicated about the claims

9   with United, and in many cases received payments from United.

10      140.    FASA is informed and believes that, as the appointed agents of the ERISA Plan

11  Defendants and the Non-ERISA Plan Defendants, United is in possession of all facts, information

12  and data concerning and related to the authorization, processing, determination, pricing, payment,

13  and appeals of all claims submitted by FASA with respect to the benefit plans.

14              **ASSIGNMENT AND STANDING**

15      141.    As a condition of the provision of services by FASA, each patient signs an

16  agreement assigning his or her health insurance benefits to FASA.  Each assignment of benefits

17  provides for FASA to be paid directly for the services provided to the patient.

18      142.    FASA received an assignment of benefits for every claim at issue in this litigation.

19  FASA's standard assignment of benefits reads as follows:

20      I, the undersigned, certify that I (or my dependent) have insurance with the above listed
        carriers, and assign directly to Forest Surgery Center ("FSC") all insurance benefits, if any,
21      otherwise payable to me for services rendered.  I understand that I am financially
        responsible for all charges whether or not paid by the insurance carrier(s).  I hereby
22      authorize the doctor and facility to release all information necessary to secure payment of
        benefits.  In addition, I understand that insurance payments made directly to the patient or
23      subscriber for services provided by FSC must be reimbursed to FSC in the form of a check
        made payable to Forest Surgery Center.  I authorize the use of this signature on all
24      insurance submissions.

25      143.    For every claim at issue in this litigation, Defendants acknowledged and consented

26  to the assignment of benefits, and/or waived any objections to or limitations on the assignment of

27  benefits and the members' right to assign the benefits, by, *inter alia,* receiving and processing

28  FASA's claims, and making and administering payments directly to FASA on such claims.

144.    FASA has standing to pursue the claims for relief in this Second Amended Complaint as an assignee of the members' benefits under the plans, as a party who has suffered injury in fact and lost money and/or property as a result of the Defendants' conduct, and as a party who rendered services to the members with the knowledge of and at the request of the Defendants and was not appropriately compensated for the fair market value of those services..

145.    In *Misic v. Building Services Employees Health & Welfare Trust*, 789 F.2d 1374, 1379 (9th Cir. 1986), the Ninth Circuit determined that a provider who is "an assignee of [ERISA plan] beneficiaries pursuant to assignments valid under ERISA, has standing to assert the claims of his assignors" against their health plan.  Similarly, in *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litigation*, __ F.Supp.2d __, 2011 WL 3555610 (C.D.Cal. Aug. 11, 2011), the court emphasized that "'[a] health care provider with an allegedly valid assignment [of benefits] has the same standing [as the beneficiary]' and may bring suit under ERISA."  *Id.* at *27 (quoting *Davidowitz v. Delta Dental Plan, Inc.*, 946 F.2d 1476, 1477 (9th Cir. 1991) (some alteration in original)).

## GENERAL ALLEGATIONS

### Services Provided by FASA to Defendants' Members and the Nature of the Plans

146.    FASA is, and at all times relevant to this litigation, was operating an ambulatory surgery center ("ASC") that provides medically necessary health care services related to medical and surgical procedures performed at its facility in San Jose, California.  At all relevant times relevant to this litigation, FASA was not contracted with any of the Defendants, nor "participated" in any of their provider networks.  Thus, FASA is what is known as a "non-contracted" or "out-of-network" provider with respect to Defendants.

147.    From 2007 through the present, FASA has provided health care services to patients who, at the time FASA provided the services, were members of health benefit plans for which Defendants exercised administrative responsibilities (such patients shall hereinafter be referred to as "members").

148.    Individuals and families that receive their health insurance through a private employer-sponsored health benefit plan are typically participants or beneficiaries of plans

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  governed by the ERISA.  However, some individuals and families receive their health insurance

2  through an employer-sponsored health benefit plan that is not governed by ERISA, such as a

3  health benefit plan for employees of a government entity.  Individuals and families who do not

4  receive employer-sponsored health insurance often purchase health insurance policies directly

5  from United.

6      149.    FASA is informed and believes that some of the health benefit plans at issue in this

7  matter are governed by ERISA (the "ERISA Plans"), and some of the health benefit plans at issue

8  in this matter are not governed by ERISA (the "Non-ERISA Plans" and, together with the ERISA

9  plans, the "Health Plans").

10     150.    FASA is also informed and believes that some of these Health Plans are funded by

11 the member's employer (the "Self-Insured Plans"), and some are fully insured by United (the

12 "Insured Plans").

13     151.    FASA is informed and believes that all of the Health Plans at issue permitted their

14 members to obtain medical and surgical services at out-of-network providers, such as FASA.

15     152.    On or about the time that FASA provided the health care services to each of the

16 members, FASA obtained a written assignment of each member's benefits under the Health Plans.

17 **The Defendants' Roles and Responsibilities With Respect To Claims**

18     153.    United is one of the nation's largest health insurers.  It underwrites and issues

19 thousands of health insurance plans.

20     154.    When individuals and families who do not receive employer-sponsored health

21 insurance purchase health insurance policies directly from United, United typically has sole

22 responsibility and discretion to administer and pay claims submitted under such policies.

23     155.    United also contracts with other entities that provide health benefit plans – such as

24 private employer-sponsored benefit plans, government-sponsored plans, welfare trusts and other

25 sources – in order to provide administrative services.  FASA is informed and believes that United

26 entered into such an agreement with each of the Health Plans, and that such agreements were in

27 force and effect at all times relevant to this litigation.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

156.    The administrative responsibilities assumed and exercised by United with respect to the Health Plans include, but are not limited to, providing plan members with plan documents, providing access to a network of contracted providers, communicating with plan members and health care providers, such as FASA, interpreting and applying plan terms and provisions, making coverage and benefits decisions, processing and adjudicating benefit claims with respect to health care services provided by both contracted (*i.e.*, "in-network") and non-contracted (*i.e.*, "out-of-network") providers, pricing such benefit claims, making and administering payments with respect to such benefit claims, processing and adjudicating appeals of such benefit determinations, functioning as the plans' "Claims Administrator," functioning as the plans' "Plan Administrator," functioning as the Plan Administrator's "designee," functioning as the plans' *de facto* Plan Administrator, functioning as a co-Plan Administrator, and/or other administrative functions.

157.    FASA is informed and believes that United's "network" of providers is generally available to the Health Plans whether the plan is an ERISA Plan or a Non-ERISA Plan, and whether the plan is an Insured Plan or a Self-Insured Plan.

158.    FASA is informed and believes that for those Health Plans that are Insured Plans, United not only is responsible for administering and paying the claims brought under the plan, but United also bears the financial responsibility to fund the claims payments that it makes and administers.  For ERISA purposes, United is the Plan Administrator and a fiduciary for such Insured Plans that are ERISA Plans.

159.    FASA is informed and believes that for those Health Plans that are Self-Insured Plans, the plan typically will enter into an "administrative service agreement" with United to perform certain administrative responsibilities, such as  those set forth above.  The administrative services agreements appoint United as a Claims Administrator and a fiduciary, and delegate to United authority, responsibility and discretion to administer claims and make final benefits decisions, based on claim procedures and standards that United develops, and in accordance with the plan terms and conditions as interpreted by United.  FASA is informed and believes that United collects administrative services fees from the Health Plans for performing the administrative functions.  FASA is informed and believes that, under the administrative services

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  agreements, the Self-Insured Plans retain ultimate financial responsibility to fund the benefit

2  payments on the claims as determined, made and administered by United.

3     160.   FASA is informed and believes that with respect to certain Self-Insured Plans that

4  are ERISA Plans, United is designated not just as a Claims Administrator, but also as the Plan

5  Administrator for ERISA purposes.  With respect to those Self-Insured Plans that are ERISA Plans

6  and that do not specifically designate a Plan Administrator for ERISA purposes, FASA is

7  informed and believes that United has functioned as the *de facto* Plan Administrator.  With respect

8  to those Self-Insured Plans that are ERISA Plans and that designate one of the ERISA Plan

9  Defendants as the Plan Administrator, FASA is informed and believes that United has functioned

10  as the designee of the designated Plan Administrator and/or as the co-Plan Administrator.  In each

11  case, United functions as a Plan Administrator insofar as it exercised a delegated authority to

12  provide plan documents to participants, receive benefit claims, evaluate and process benefit

13  claims, review and interpret the terms of the plan, make benefit determinations, make and

14  administer benefit payments, adjudicate appeals of benefit determinations, and serve as the

15  primary point of contact for members and providers to communicate regarding benefits and

16  benefit determinations.  In carrying out these Plan Administrator functions, United possessed

17  authority and fiduciary discretion to manage and administer the ERISA Plans, effectively controls

18  the decision whether to honor or deny a claim, exercises authority over the resolution of benefit

19  claims, and/or has responsibility to pay the claims.

20  **UCR Reimbursement To Out-Of-Network Ambulatory Surgery Centers**

21     161.   Under some health benefit plans, such as Health Maintenance Organizations

22  ("HMOs"), member benefits are restricted to services provided by in-network providers (except in

23  emergency and other limited circumstances).

24     162.   In contrast, many health benefit plans, such as Preferred Provider Organizations

25  ("PPOs"), indemnity plans and others, permit their members to access health care providers who

26  are outside the contracted network.  Plans which offer coverage for such out-of-network services,

27  including the services of ASCs, are marketed to prospective members as benefiting them with the

28  freedom and flexibility to choose the health care provider of their choice, including out-of-network

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

1   providers.  FASA is informed and believes that these plans charge members a higher premium or

2   contribution in exchange for this purported freedom of choice.

3        163.    FASA is informed and believes that the Health Plans involved in this litigation

4   typically provide that the member has the freedom to choose in-network or out-of-network

5   providers, and that covered services provided by out-of-network providers will be eligible for

6   reimbursement pursuant to the out-of-network benefit provisions of the plan.  The Health Plans

7   also typically provide that in-network providers have agreed to accept specifically negotiated,

8   discounted rates for their services that out-of-network providers have not agreed to accept, and

9   that the Health Plans provide certain incentives to the in-network providers.

10        164.    FASA is informed and believes that the Health Plans also typically provide that

11  outpatient surgical services performed at an ASC are eligible for coverage under the plans.

12        165.    FASA is informed and believes that under each of the Health Plans at issue in this

13  litigation that offer in-network and out-of-network coverage, and pursuant to the administrative

14  service agreements between United and the other Defendants, United provides access to its

15  provider network to members of the plans.

16        166.    Some ASCs have written contracts with United, under which they agree to accept

17  reimbursement amounts that are discounted from the ASC's total billed charges, in exchange for

18  the benefits of being an in-network provider (also sometimes called a "contracted" or

19  "participating" provider) for United's network.  These benefits typically include an increased

20  volume of business, because the health benefit plans provide financial incentives to their members

21  to utilize the services of in-network providers – such as reduced co-insurance payments, annual

22  deductibles and/or annual out-of-pocket maximums – as well as incentives to the contracted

23  providers.

24        167.    Conversely, some ASCs, including FASA, do not have written contracts to be part

25  of United's network.  They are out-of-network providers (also sometimes called "non-contracted"

26  or "non-participating" providers).  As a result, these ASCs receive a lesser volume of patients

27  from the health benefit plans United administers, but they are not required to accept the discounted

28  in-network amounts for the services rendered to the plan members.

168.     Whether the benefits claims are from out-of-network ASCs, such as FASA, or from in-network ASCs, the claims reflect the ASCs' actual billed charge for the claims.  Even though in-network ASCs are typically reimbursed according to the discounted contract rates they negotiated to become part of the network, they still submit their full billed charges on the claim.  This practice is industry standard for all providers, and reflects the well-established fact that charges are not the same as discounted in-network contract rates.  Therefore, United has for many years acquired a wealth of charge data from which it could price FASA's claims through a proper comparison of prevailing charges for similar health care services by similar ASCs within the same geographical market at the time.

169.     Each year United processes hundreds of claims submitted by FASA for health care services that FASA provides to members pursuant to the Health Plans and the assignments of benefits under those Health Plans that FASA receives from the members.   From 2007 through the present, FASA timely submitted at least 1,500 claims for payment to United as a result of services provided by FASA to the members.  To date, Defendants have reimbursed FASA for only a fraction of the amount due to FASA in respect of the claims, despite many appeals and demands submitted to Defendants by or on behalf of FASA.

170.     At all relevant times, FASA submitted the appropriate claim forms for payment to United.  The claim forms include information such as the type of procedure, the coding for the procedure, the fact that FASA is an assignee of the member's benefits, and other information by which the claim can be processed and paid.  The claim form also includes FASA's billed charges.  These bills are submitted on industry standard forms, commonly known as Uniform Billing ("UB") forms.  The "charge" amount that FASA submits on a reimbursement claim is the same regardless of whether the payor is an out-of-network payor, an in-network payor, a government payor, or a private payor.  This also is industry standard.

171.     FASA's billed charges are competitive with both other out-of-network ASCs and in-network ASCs in the same geographic region in which FASA provides services.

172.     In accordance with the assignment of benefits, after processing FASA's claim, either United one of the other Defendants routinely sends the reimbursement check and an

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

accompanying EOB directly to FASA, thereby affirming the validity of the assignment of benefits and acknowledging FASA's status as the "beneficiary" and "claimant" for benefits.

173.    In most instances, as an out-of-network provider of health care services, FASA submitted the claims to United for pricing and payment according to a payment rate that in the industry and in plan documents is commonly referred to as the "Usual, Customary and Reasonable" rate, the "Reasonable and Customary" amount, the "Usual and Customary" amount, the "Reasonable Charge," the "Prevailing Rate," the "Usual Fee," the "Competitive Fee," or some other similar phrase that, in the context of the healthcare industry, and in the Defendants' own parlance, means essentially the same thing. The industry shorthand for these terms is "UCR."

174.    For decades, commercial payors like United and the other Defendants have purported to reimburse for out-of-network services according to the UCR rate.  The UCR amount is properly determined based on a review of the prevailing or competitive charges for similar health care services by similar types of providers within the same geographical area at the time. Reimbursement at the UCR rate has become so-well established and understood that some states, including California, now require certain health benefit plans to reimburse out-of-network services at rates using criteria that parallel the industry-standard for determining UCR.  *See, e.g.,* 28 C.C.R. § 1300.71(a)(3)(B) (referring to prevailing provider rates **charged** in the general geographic area in which the services were rendered).

175.    United and the other Defendants, through the plan documents, marketing materials, insurance verification and eligibility materials, EOBs, appeal response letters, and other written and oral statements, represented to FASA, and to their members with out-of-network benefit coverage, that the Health Plans will pay for out-of-network services in an amount that is the lower of either the provider's actual billed charge or the UCR amount.

176.    Indeed, until as recently as 2010, United routinely stated on its website that it would pay out-of-network providers "based on language in the member's health plan that in most cases requires the amount to be the lower of either:

- the out-of-network provider's actual charge billed to the member, or

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

- 'the reasonable and customary amount,' 'the usual, customary, and reasonable amount,' 'the prevailing rate,' or other similar terms that base payment on <u>what other healthcare providers in a geographic area charge for their services</u>." [Emphasis added.]

A virtually identical statement still appeared on United website as of the filing of this Second Amended Complaint at http://www.uhc.com/legal/payment_of_out_of_network_benefits.htm.

177.   FASA is informed and believes that the Health Plans at issue in this litigation typically provide that for out-of-network services, the plan will reimburse X% of the expenses covered by the plan after any applicable out-of-network deductible has been met. Many of the Health Plans also provide that the plan will reimburse a higher percentage of covered expenses (often 100%) once the member meets any applicable out-of-pocket maximum threshold. The covered expenses are then defined in a manner consistent with the UCR standard, or are limited to the UCR amount for the particular services.  For example, the following excerpts from a selection of the Health Plans at issue in this litigation demonstrate how the plans describe the UCR standard:

(a)   "Usual, customary, and reasonable (UCR) [-] This is the average fee charged by a majority of health care providers in a given geographic area for a particular service. Whenever you use non-network providers, benefits are paid based on UCR rates."  (Apple Plan)

(b)   "[For out-of-network charges, 'reasonable charge' means] an amount measured and determined by the Company by comparing the actual charge for the service or supply with the prevailing charges made for it.  The Company determines the prevailing charge.  It takes into account all pertinent factors including: [i] The complexity of the service. [ii] The range of services provided. [iii] The prevailing charge level in the geographic area where the provider is located and other geographic areas having similar medical cost experience."  (Alameda Plan)

(c)   "When you receive care from non-network providers, you must meet an annual deductible before receiving benefits from the plans. The plans will only reimburse reasonable and customary (R&C) charges for services provided from non-network providers…. Eligible expenses and R&C charges are determined as stated below: … For non-network benefits, eligible expenses are based on either … available data resources of competitive fees in that geographic area [or] negotiated rates agreed to by the non-Network provider …." (Oracle Plan)

(d)   "When covered health services are received from non-network providers, the claims administrator calculates eligible expenses based on available data resources of competitive fees in that geographic area."  (Abbott Plan;

*accord* Coherent Plan; Eclipsys Plan; Synopsys Plan; Whole Foods Plan; Williams-Sonoma Plan)

(e)   "If you obtain care from an out-of-network provider, benefits may be subject to reasonable and customary (R&C) limits. The R&C amount for a type of service is determined by the claims administrator ([United]). The claims administrator makes this decision by comparing the fees charged by similar providers for the same service in the same geographic area." (Amtrak Plan)

(f)   "[For non-network benefits, eligible expenses are based on] selected data resources which, in the judgment of the Claims Administrator, represent competitive fees in that geographic area...." (AMD Plan; Ameriprise Plan; Cadence Plan; CNA Plan; Electronic Arts Plan; Flextronics Plan; KLA Tencor Plan; Mahindra Plan; Mentor Graphics; NCR Plan; Novellus Plan; NXP Plan; Spansion Plan; Wipro Plan)

(g)   "When Covered Health Services are received from non-Network providers, Eligible Expenses are determined, at the Claims Administrator's discretion, based on: [i] Available data resources of competitive fees in that geographic area...." (Discount Tire Plan; Hynix Plan; *accord* Qualcomm Plan)

(h)   "Reasonable and Customary (R&C) Charge [-] The portion of a charge covered under the PPO-style medical plan when you use non-PPO providers.... The R&C charge for a service or supply is the lesser of the: [i] Provider's usual charge for furnishing the service or supply, or [ii] Charge [the Claims Administrator] determines to be the R&C charge percentage made for the service or supply in the geographic location where it is furnished." (Cisco Plan)

(i)   "When you go to an Out-of-Network Provider for care, ... [t]he plan's Coinsurance is based on the Reasonable and Customary (R&C) Rate, as determined by the Claims Administrator.... The Reasonable and Customary (R&C) Rate is an amount determined by the Claims Administrator by comparing the actual charge for the service or supply with the prevailing charges made for it in a geographic area based on the complexity and range of services provided." (General Dynamics Plan)

(j)   "The percentage paid is a percentage of the usual and prevailing fee (sometimes known as the reasonable and customary amount). If your provider charges more than the usual and prevailing fee, you are responsible for paying 100% of the charges in excess of that fee." (McGraw-Hill Plan)

(k)   "Reasonable and Customary (R&C) Amount [-] [United] uses reasonable and customary (R&C) values to determine the maximum allowable reimbursement amount for out-of-network claims. [United] determines R&C values annually by using a combination of claims data, such as the National Health Insurance Association of America data files, and charges submitted by providers directly. The 90th percentile is generally the basis for R&C values. The 90th percentile is the dollar amount that covers the full amount charged on 90% of the claims in the database for a specific service or supply, excluding the highs and lows. Since the cost of living varies geographically, R&C amounts differ depending on where a procedure is performed." (Philips Plan)

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

(l)   "When you receive care from an out-of-network provider, … the Plan pays benefits based on reasonable and customary (R&C) charges. R&C charges are based on the typical amounts charged by most providers in your geographic area for specific medical services."  (US Airways Plan)

(m)   "The Plan considers the reasonable and customary charge to be: [i] The fee that is most frequently charged to a majority of a doctor's patients for a similar service or procedure; and [ii] The prevailing range of fees charged by most doctors of similar training and experience within a geographic area for similar services or procedures.  The health plan determines reasonable and customary charges …. For this Plan, rates are negotiated between the health plan and participating providers for in-network services. As a result, reasonable and customary charges apply only to out-of-network services. All references to eligible expenses throughout this booklet assume that your and your covered dependent's charges are for eligible reasonable and customary expenses."  (W.W. Grainger Plan)

(n)   "When covered health services are received from out-of-network providers, the claims administrator calculates eligible expenses based on available data resources of competitive fees in that geographic area that are acceptable to the claims administrator. These fees are referred to as reasonable and customary, or usual and customary, expenses. For the purpose of this Plan, reasonable and customary is defined as below or at the 90th percentile of what doctors, hospitals, and medical care providers in a specific area charge for similar services, as determined by [United]."  (Wells Fargo Plan)

(o)   "Reasonable and Customary (R&C) Charge [-] The prevailing charge in your geographic area for a like service or supply. Benefits under the Plan are based on the R&C — or usual and prevailing — charge for each covered service. The Plan does not cover charges in excess of the R&C charge."  (Covidien Plan)

(p)   "Eligible out-of-network expenses are limited to the 'reasonable and customary' (R&C) amount charged for a particular service in a particular area (including emergency care). An R&C charge is the comparison of the actual cost for comparable treatment, services, or supplies for similar medical conditions that does not exceed the common level of charges being made by others of similar standing in the location where the charge is incurred (see "What is a reasonable and customary charge?" later in this section)…. A reasonable and customary (R&C) charge … takes into account all pertinent factors, including the complexity and range of services provided, and the most frequent charge level in the provider's location and in other locations by providers having similar medical experience. R&C charge limits for each geographic area are based on the 90th percentile of actual charges for each medical procedure code and are updated approximately every six months."  (Hewlett-Packard Plan)

(q)   "[For Out-of-Network Benefits], [y]ou are responsible for any expenses above the usual and customary rate…. Usual and Prevailing Rate: Refers to the standard fee charged by physicians or other providers in a specific geographic area for a treatment, service or supply, based on actual fees, as determined by the health plans. Amounts above the usual and prevailing rate are considered ineligible expenses and will not count toward either the annual deductible or annual out-of-pocket maximum."  (IBM Plan)

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

(r)   "The plan covers reasonable and customary charges Since non-network providers can charge any amount for their services, the plan limits coverage to charges considered reasonable and customary (R&C). R&C is the amount charged by most doctors and dentists for the same services and procedures in the same geographic area. Most often, at least 90% of the time, the bills for a particular procedure are eligible for full payment."  (Barnes & Noble Plan)

(s)   "Out-of-Network Care: Generally, after all deductible requirements are met, the Plan covers 70% of the reasonable and customary charges for covered services until you reach your annual out-of-network out-of-pocket maximum. After you meet your annual out-of-network out-of-pocket maximum, the Plan pays 100% of the reasonable and customary charges for covered services for the rest of the plan year….. Generally, a reasonable and customary medical charge is the amount determined by the Plan to be appropriate reimbursement for a covered expense. A covered expense is considered to be a 'reasonable and customary charge' when it is within established fees for similar treatment or services, provided by a doctor with similar training, for specific medical conditions in a particular geographic area."  (Procter & Gamble Plan)

178.   FASA is informed and believes, and thereon alleges, that the remaining Health Plans at issue in this litigation contain terms reflecting the UCR standard that are consistent with those set forth above.  FASA has not had the opportunity to conduct discovery of all of the applicable plan documents relevant to this litigation, and will periodically amend its allegations to include reference to the terms of those Health Plans as discovery is completed.

179.   Because the industry standard traditionally has been for reimbursement of out-of-network providers according to the UCR rate, and because United and the other Defendants represented that out-of-network providers, including FASA, would be, and were being, reimbursed at the UCR rate, FASA – and the members who assigned their plan benefits to FASA – reasonably expected FASA's claims to be reimbursed pursuant to a methodology legitimately based on UCR, and reasonably relied upon the representations by United and the other Defendants that FASA's claims would be, and were being, reimbursed based on UCR.

180.   The sponsors and administrators of the Health Plans, including United and the other Defendants, have fiduciary duties to ensure that out-of-network claims, such as those submitted by FASA, are properly priced and paid according to the UCR standard, as set forth in the plans' governing documents and in United's and the other Defendants' communications with FASA and the members regarding plan benefits.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

181.    But FASA is informed and believes that United, on behalf of itself and the other Defendants – and, through their collusion with United, the other Defendants – has participated in the systematic under-pricing and underpayment of FASA's claims, as well as in the systematic obfuscation, misrepresentation and concealment of that misconduct.  In fact, Defendants have, in many cases, paid FASA vastly lower amounts than they paid for similar services to an affiliated out-of-network ASC in the same geographic area at during the same general period of time.  FASA is informed and believes that the reduced payments received by FASA were based on United's flawed and improper methodologies for determining UCR, which failed to take into satisfy the UCR standard.

### United's Improper Pricing Methodologies

182.    FASA is informed and believes that United has systematically failed to properly reimburse FASA's claims according to the UCR standard, and has systematically concealed this failure, including through material misrepresentations, omissions, and misleading statements about its pricing and payment methods.

183.    FASA is informed and believes that United uses a variety of methods for pricing FASA's out-of-network claims.  Yet, despite having access to a wealth of ASC charge data, none of these methods price FASA's claims according to the UCR standard.  Indeed, United often simply ignores provider charges altogether.

184.    FASA is informed and believes that one of United's improper methods for calculating the out-of-network UCR rate for FASA is to base the UCR rate on contracted rates, or the "highest in-network rate."  FASA is informed and believes that the "highest in-network rate" methodology considers only two factors: the billing code for the procedure, and a fixed, contractually-based discounted rate that in-network ASCs receive for the procedure pursuant to a negotiated discount.  United then apparently multiplies the in-network rate by an arbitrary multiplier to arrive at an "allowed amount."  FASA has not had the opportunity to conduct discovery on whether United in fact uses a multiple of its "highest" contracted rates under this methodology, or as to how United selects the arbitrary multipliers.  In any event, it is arbitrary, capricious and improper to use the discounted rates paid to contracted in-network providers to

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   establish the UCR reimbursement amount for claims submitted by FASA, which is a non-

2   contracted out-of-network provider.

3       185.    FASA is informed and believes that another improper pricing method sometimes

4   used by United to determine the UCR rate of out-of-network claims is a Medicare-based system

5   that United calls the Maximum Non-Network Reimbursement Program ("MNRP") method.

6   FASA is informed and believes that MNRP creates a maximum allowable reimbursement for out-

7   of-network services using rates and methodologies established by Medicare, and that the

8   calculation for this methodology is typically the Centers for Medicare and Medicaid Services

9   ("CMS") rates multiplied by a factor such as 1.15, 1.25 or 1.40.  The MNRP is similar to the

10  "highest in-network rate" methodology, in that it is an arbitrary, capricious and improper method

11  for determining UCR for FASA's out-of-network claims.

12      186.    In addition, FASA is informed and believes that United sometimes determines the

13  UCR rate for out-of-network claims by reference to the amount set by the State of California for

14  reimbursement of workers compensation claims.  FASA is informed and believes that, much like

15  the MNRP method, this method uses a multiple of the Medicare rates established by CMS, as set

16  forth in the Official Medical Fee Schedule ("OMFS") promulgated by the California Division of

17  Workers' Compensation.  Like the MNRP and the "highest in-network rate" methodologies, the

18  OMFS rate methodology is an arbitrary, capricious and improper method for determining UCR for

19  FASA's out-of-network claims.

20      187.    FASA is informed and believes that United also has calculated the UCR rate for

21  some of its out-of-network claims using what is commonly referred to as the "Ingenix Database."

22  The Ingenix Database is comprised of at least two databases, the Prevailing Healthcare Charges

23  System ("PHCS") and MDR databases operated by defendant Ingenix, Inc., which are inherently

24  flawed and inadequate to establish appropriate UCR amounts, as set forth below.

25      188.    FASA is informed and believes that United also may employ other improper

26  methods for pricing FASA's out-of-network claims that do not appropriately establish UCR.

27  Regardless of method, however, all of FASA's claims were priced in a manner that did not follow

28  the customary, proper and stated criteria for determining UCR.

189.   It is arbitrary, capricious and improper for United to use discounted in-network contract rates, Medicare rates, workers' compensation rates, or regulated fee schedules to establish reimbursement rates for FASA's claims for non-contracted out-of-network services.  Yet, FASA is informed and believes that this is exactly what United did – and does – when it processed and paid FASA's out-of-network claims using United's "highest in-network rate" and MNRP methods, or when it relies upon the OMFS imposed by the State of California for workers' compensation claims or other regulated fee schedules.

190.   FASA is informed and believes that Defendants know that in-network rates are lower than billed charges because obtaining a discount from billed charges is a key purpose for having a provider network.  The governing documents of health benefit plans often plainly state that the negotiated fees paid to contracted in-network providers are typically lower than the amounts charged by non-contracted out-of-network providers, and that these rates represent a discount from provider charges.  Thus, using in-network rates for claims for out-of-network services fails to take into consideration the necessary factors for determining the UCR amount, and does not compare FASA's actual <u>charges</u> with the usual, customary or competitive <u>charges</u> for the same or similar services in the relevant geographic area.

191.   FASA is informed and believes that United and the other Defendants know that Medicare rates, workers compensation rates, and other government-imposed fee schedules are not a proper basis for determining UCR.  FASA is informed and believes that the MNRP method and the OMFS method are derived from Medicare rates set by CMS.  Medicare constitutes the largest contracted payor in the country, since each provider wishing to participate in the Medicare program must sign a contract agreeing to accept Medicare rates for Medicare beneficiaries.  Medicare rates also are set by the federal government, solely for use as a payor of last resort to cover elderly and disabled individuals, based largely within the limits of the annual Congressional budgets for the Medicare program, and regardless of what the market rate would be for the services when provided in a non-Medicare setting.  Thus, using Medicare rates for claims for out-of-network services provided to non-Medicare beneficiaries fails to take into consideration the necessary factors for determining the UCR rate, and does not compare FASA's actual <u>charges</u>

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

with the usual, customary or competitive <u>charges</u> for the same or similar services in the relevant geographic area.

192.    It also is arbitrary, capricious and improper for United to use the Ingenix Database for establishing UCR rates, if that is what United used.  While the sources of information collected for the Ingenix Database are asserted by United to be trustworthy charge data collected from health insurers and other industry sources, FASA is informed and believes that the Ingenix Database contains numerous flaws, including, but not limited to:

(a) Using data which is not representative of charges within a geographic area;

(b) Using data which does not reflect the charges of providers with any particular degree of expertise or specialization;

(c) Using data which is not based upon comparable services;

(d) Using data which is not based on the details of the type of facility;

(e) No determination of the numbers or types of providers in any geographic area;

(f) Subjection to pre-editing and "scrubbing" by data contributors such as the health insurers who have a financial incentive to skew the data downward;

(g) No determination of the actual types of procedures within a geographic area;

(h) Collection of charge data which is not representative of the actual number of procedures performed within a geographic area;

(i) Insufficient collection of provider-specific data to enable its users to determine whether the charges are from one provider, from several providers, or from only a minority or specific subset of the providers in a geographic area;

(j) No collection of patient specific information such as age or medical history or condition;

(k) No determination of the most common charge for the same service or comparable service or supply;

(l) No determination of the place of service or type of facility;

(m) Insufficient data collection for determining an appropriate geographic medical market for comparing like charges;

(n) Combining zip codes inappropriately and using zip codes instead of appropriate geographic medical markets;

(o) Combining all provider charges by procedure code without regard to factors such as use of resources and other costs to the provider;

(p) No comparison of procedures of the same or similar complexity by, among other things, recording or accounting for applicable procedure code modifiers;

(q) No use of an appropriate statistical methodology;

(r) No proper consideration of charging protocols and billing practices generally accepted by the medical community or specialty groups;

(s) No proper consideration of medical costs in setting geographic areas;

(t) Lack of quality control, such as basic auditing, to ensure the validity, completeness, representation, and authenticity of the data submitted;

(u) Reporting of charges that are systemically skewed downward;

(v) Using relative values and conversion factors to derive inappropriate UCR amounts; and

(w) Not applying appropriate inflation factors when using older charge data.

193.    FASA is informed and believes that, at all relevant times, the ERISA Plan Defendants and the Non-ERISA Plan Defendants relied on, knew of, and agreed with United's decision to use flawed reimbursement methodologies to systematically underpay FASA's claims for the out-of-network services that FASA provided to the members.

194.    FASA  is still in the process of investigating and discovering the methods that United and the other Defendants used, and continue to use, for pricing and reimbursing FASA's claims.  It is clear, however, that United has failed to implement an appropriate methodology for establishing the UCR amount.  None of United's methods are based on a review of the prevailing or competitive charges for similar healthcare services by similar providers within the same geographical area at the time.

**False and Misleading Representations Of UCR Reimbursement**

195.    Members treated by FASA expect their health benefit plans and the administrators of their health benefit plans to accurately and appropriately reimburse the out-of-network services provided by FASA based on UCR.

196.    To ensure direct payment from United and the other Defendants, FASA routinely obtains an assignment of benefits from the members in advance of providing services to the member.  This assignment expressly authorizes direct payment to FASA for the medical and surgical benefits allowable under the plan, and otherwise payable to the member under the plan, as

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   payment toward the total charges for the services rendered.  Thus, the members assigned their

2   health care benefits under the plan, and the correlative rights arising from these benefits, to FASA.

3   This is a standard industry practice among healthcare providers.  Moreover, FASA is informed

4   and believes that the Health Plans typically provide that, for out-of-network benefits, claim

5   reimbursement will be paid directly to the provider if the provider notifies United that an

6   assignment of benefits is on file.  Accordingly, the plans typically require United to honor

7   assignments of benefits from the member to FASA.

8       197.    FASA is informed and believes that Defendants know that United's methodologies

9   do not actually establish a UCR amount, and that, as a consequence, FASA is being systematically

10  underpaid for its services.  Nonetheless, rather than disclosing the true methodologies being used

11  to calculate the benefit determinations and reimbursement payments for FASA's claims, the

12  Defendants made representations – to FASA and to their own members – either that United had

13  accurately and appropriately calculated the amount owed to FASA pursuant to the UCR standard,

14  or that the services provided by FASA were not entitled to coverage under the plans.

15      198.    For example, prior to providing the services, FASA first contacted United to verify

16  that the member was an eligible member.  Known as the "verification of benefits," this contact is

17  how FASA determined –  prior to providing the services – whether the member had out-of-

18  network benefits and, if so, what those benefits were.

19      199.    When verifying benefits, FASA's employees would either call the United phone

20  number provided on the members' health insurance cards, and/or query the on-line benefit

21  eligibility verification system maintained by United at UnitedHealthcare Online.  FASA is

22  informed and believes that responding to verification of benefit inquiries is one of the

23  administrative services that United provides with respect to the plans.

24      200.    In response to FASA's inquiry about out-of-network benefits, United, on behalf of

25  itself and the other Defendants, typically informed FASA that the member had out-of-network

26  benefits at a particular percentage (*e.g.*, 60%, 70%, 80%).  In the industry context and in

27  conformance with industry standard, and in light of the common course of dealing between a

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

provider and payor, the percentage provided is a percentage of UCR or the provider's full billed charges.

201.    Moreover, the Explanations of Benefits ("EOBs") that United sent to FASA and the members usually represent that out-of-network benefits are calculated based on the UCR standard. The EOBs list the billed charge, the amount of the charge being "allowed," the applicable benefit percentage, any applicable deductibles or copayments, the payment amount, and the amount that is the responsibility of the member.  The payment amount is the benefit percentage applied to the "allowed amount," minus any applicable deductibles and copayments. The member is listed as responsible for any difference between the billed charge and the payment amount.  The EOBs are written so that the "allowed amount" appears to be the UCR rate, because the EOBs typically will provide as follows in an explanatory remark on the EOB:

> Your plan covers **reasonable charges** for therapeutic treatment of sickness or injury.  The **reasonable charge** is based on amounts **charged** by other providers for similar services or supplies. [Emphasis added.]

Thus, United represents that the Health Plan at issue requires reimbursement based on UCR and that the reimbursement amount was calculated based on UCR.  However, United's representations that it's reimbursements were based on the UCR standard were false and/or misleading, and United and the other Defendants knew the representations were false and/or misleading.

202.    Nevertheless, and despite these representations both before and after FASA provided its services, the on-line claim status site to which United directed FASA to monitor the status of submitted claims regularly provided an utterly different, but equally false, rationale for United's benefit determinations.  The "Claim Status" reports available to FASA at the UnitedHealthcare Online website regularly represented to FASA that its claim, or a portion of the claim, had been denied because: "This service is cosmetic and does not meet coverage requirements.  Therefore, no benefits are available for this service."  However, the services provided by FASA were medically necessary, non-cosmetic services subject to coverage under the member's plan, as evidenced by United's payment of at least some portion of the claim. Accordingly, such representations were false and/or misleading, and United and the other

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   Defendants knew the representations were false and/or misleading.  Moreover, the inconsistent,

2   conflicting and inadequate rationales provided by United in the EOBs and claim status reports

3   impeded FASA's ability to understand the basis for and methodology underlying United's benefit

4   determinations, and obstructed FASA's ability to challenge those determinations.

5         203.    United also made similar statements and representations in letters sent to FASA

6   and the members during the course of administrative appeals filed by FASA with United.  These

7   response letters expressly represented that reimbursement was based on the UCR rate, and would

8   typically provide that "[t]he plan covers reasonable charges for therapeutic treatment of sickness

9   or injury.  The reasonable charge is based on amounts charged by other providers for similar

10  services or supplies in your area."  Such statements were designed to conform to the plans'

11  descriptions of UCR reimbursement, to the health care industry's accepted understanding of UCR,

12  and to the representations made by United in the EOBs.  They also were designed to conform to

13  United's own representations – such as that on its website – of its out-of-network reimbursement

14  methodology, in which United represented that it bases payment on what other health care

15  providers in a geographic area charge for similar services or supplies.  However, such

16  representations were false and/or misleading, and United and the other Defendants knew the

17  representations were false and/or misleading.

18        204.    United also sometimes represented in these appeal response letters that the UCR

19  reimbursement rates for the out-of-network claims submitted by FASA were mandated by the

20  State of California.  Such response letters would state that the claim "was paid as a global fee in

21  compliance with the State of California's Ambulatory Surgical Center Pricing standards. The

22  usual and customary allowables were determined by the State of California.  The rates appear to

23  be triple the Medicare allowable amount for the service provided although to determine the exact

24  formulation for reimbursement the State of California should be contacted.  United Healthcare

25  paid the maximum allowable for the services provided."  In these communications, United thereby

26  represented to FASA and to the members that United did not determine the reimbursement rate for

27  FASA's out-of-network claims, but, rather, that the reimbursement rate was pre-determined by

28  pricing standards imposed by the State of California for services provided by ASCs, that United

1  paid that reimbursement rate in compliance with the requirements of the California standards, that

2  the reimbursement paid was the maximum that United was allowed to pay pursuant to those

3  standards, and that the reimbursement rate was a UCR amount.  However, such representations

4  were false and/or misleading, and United and the other Defendants knew the representations were

5  false and/or misleading.

6        205.  Further, United sometimes represented in its appeal response letters that it had

7  calculated the UCR rate for FASA's claims using the Ingenix Database, which United purported to

8  consist of accurate prevailing provider charges.  In these communications, United represented to

9  FASA and to its own members that it relied on the Ingenix Database to calculate the UCR amount,

10  and/or represented that the Ingenix Database contains trustworthy charge material collected from

11  the largest health insurers in the country and reliable industry sources.  United also made these

12  representations on its website, where it stated that "in most cases" it pays out-of-network claims

13  based on the reasonable and customary amount of charges of other health care providers in the

14  geographic area as determined using the Ingenix Database.  Given the flaws and abuses

15  concerning the Ingenix Database which have come to light in recent years, the use of the Ingenix

16  Database for determining the UCR reimbursement rates applicable to FASA's claims for out-of-

17  network services is invalid and unlawful.  Moreover, FASA is informed and believes that United

18  often did not even use the Ingenix Database to determine the UCR reimbursement rate for FASA's

19  claims, despite asserting during the ordinary course of business that it did.  Accordingly, such

20  representations were false and/or misleading, and United and the other Defendants knew the

21  representations were false and/or misleading.

22        206.  United made the foregoing representations, and continues to make certain of the

23  foregoing representations, both on its own behalf and on behalf of the other Defendants that

24  contract with United to administer the plans.

25        207.  FASA is informed and believes that, with respect to the claims that United

26  administers for the other Defendants, the other Defendants have at all pertinent times been aware

27  of United's statements to FASA, have authorized United to make such statements pursuant to the

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

1  authority delegated to United in the administrative services agreements, and have known that

2  United's statements were false and/or misleading.

3      208.    United's statements regarding the calculation of UCR for FASA's claims for out-

4  of-network services were false and/or misleading in multiple ways.  United's "highest in-network

5  rate" and MNRP methodologies, as well as its asserted reliance on and compliance with ASC

6  pricing standards imposed by the State of California, do not take into account actual provider

7  charges, nor do they compare FASA's actual charges with charges by other ASCs for the same or

8  similar service in the relevant geographic area.  Accordingly, by using in-network rates, Medicare

9  rates, or a state-adopted fee schedule to calculate payments for FASA's out-of-network claims,

10  United's representations in its EOBs and appeal response letters that the reimbursement amounts

11  paid to FASA were based on amounts charged by other providers for similar services or supplies

12  were false and/or misleading.

13      209.    Further, United's statements in its correspondence with FASA and the members

14  that it the reimbursement rates for FASA's out-of-network claims were determined by the State of

15  California, were paid by United in compliance with pricing standards set by the State of

16  California, and were UCR amounts – when, on information and belief, those rates are imposed by

17  regulation for workers compensation cases, are based on Medicare rates, do not take into account

18  actual provider charges, and do not compare FASA's actual charges with charges by other ASCs

19  for the same or similar service in the relevant geographic area – are false and/or misleading.

20      210.    Moreover, United's statements in its correspondence with FASA and the members

21  that it relied on the Ingenix Database to determine UCR – when in fact it relied on the highest in-

22  network rate, MNRP, OMFS or other methodologies – are false and/or misleading.

23      211.    Additionally, United's statements are false and/or misleading because, had United

24  accurately and appropriately priced and paid FASA's claims, United's EOBs would show that the

25  members owed far lower amounts to FASA, and that, in many cases, the members' out-of-pocket

26  thresholds had been satisfied, triggering a higher level of benefits.

27

28

212.    FASA and, on information and belief, the members acted in reliance on the United's representations, and FASA has been harmed by Defendants' failure to properly calculate and pay FASA for the health care services that were provided to the Defendants' members.

213.    The representations by United outlined above, on behalf of itself and the other Defendants, routinely failed to disclose the use of the "highest in-network rate" method, the MNRP method, or any other improper method used by United to price FASA's claims, and amounted to misrepresentation and/or concealment of the true methods by which United reimbursed FASA's claims.

214.    In fact, in a declaration previously filed in this litigation, a representative of United stated that, as of at least March 2010, the reimbursement amount for most of the claims submitted by FASA "was determined by reference to (1) a multiple of the highest in-network rate for the service, or (2) a program based on a multiple of Medicare rates called the Maximum Non-Network Reimbursement Program ('MNRP')."  Yet despite this declaration, United has repeatedly misrepresented in EOBs and appeal response letters for claims submitted by FASA in or after March 2010 that the reimbursement was calculated pursuant to a proper UCR methodology and represented a UCR amount, that the reimbursement amount was calculated according to the Ingenix Database, or that the reimbursement amount was determined by the State of California – or a combination of these misrepresentations.

**Example Claims and Misrepresentations**

215.    For example, the following examples demonstrate how United repeatedly used misrepresentations, omissions, misleading statements and other efforts to conceal its true methods for pricing FASA's claims:

(a)    Patient A[1] came to FASA for a surgical procedure in June 2010.  Prior to the

procedure, FASA obtained an assignment of benefits from Patient A, as well as an

_____

[1] The names of the patients set forth herein as examples have been changed to letters, and the dates of service limited to the month of service, to preserve patient confidentiality.  FASA will disclose patient identity information to Defendants on an as-needed basis and pursuant to a protective order.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

authorization to appeal United's benefit determination as Patient A's designated representative.  Following its regular business practice, FASA contacted United to verify Patient A's eligibility and out-of-network benefits through the Agilent Plan, which, on information and belief, provided for payment of out-of-network benefits for Patient A at 70% of UCR (after any applicable deductibles and up to any annual out-of-pocket maximum).  United verified Patient A's eligibility and benefits.  Thereafter, in reasonable reliance on this eligibility and benefit verification, FASA provided its services to Patient A. FASA billed United in a timely manner, and the total charges for FASA's services were $11,997.00.

In a "Claim Status" report that FASA accessed electronically at UnitedHealthcare Online, and to which United directed FASA for information regarding the status of its claims, United stated that $6,774.00 of the total billed charges were not covered and that only $2,781.03 – or approximately 23% of the total charges – would be paid for the services provided to Patient A.  The reason provided by United in the on-line status form for the non-covered portion of FASA's charge read as follows: "This service is cosmetic and does not meet coverage requirements.  Therefore, no benefits are available for this service."  However, United knew that the service rendered to Patient A was not cosmetic, and in fact was covered under the plan, as evidenced by United's payment of even a portion of the charges. Consequently, United's statement in its "Claims Status" report was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

Likewise, in the EOB that United sent to FASA dated August 24, 2010, United stated that the "Amount Allowed" was only $5,223.00, and, after further applying a patient deductible and the out-of-network benefit level, United paid only $2,781.03 for the claim. However, the EOB provided a different explanation for the non-covered portion of FASA's claim.  The EOB stated merely that the "plan covers reasonable charges," which, according to the EOB, was "based on amounts charged by other providers for similar

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

services or supplies," and that "payment of benefits has been made in accordance with the terms of the managed care system." Thus, United represented that the plan requires reimbursement based on UCR and that the reimbursement amount for Patient A was calculated based on UCR, when in fact United knew that the reimbursement was calculated using a methodology that does not reflect UCR. According to United's own statements in this litigation, as of at least March 2010, United reimbursed services provided by FASA pursuant to either the "highest in-network rate" methodology or the MNRP methodology, neither of which constitute UCR. Consequently, United's statement in its EOB was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

FASA timely appealed the claim reimbursement. On September 1, 2010, United responded in a letter to FASA stating, without providing any substantive reasons as to why, that United "reviewed your request about the above claim for [Patient A]. Based on our review, we determined that we processed this claim accurately. No further payment is due from us because this claim was correctly processed according to the terms of the patient's health benefit plan."

FASA filed another appeal. On September 15, 2010, United notified FASA that it had received an appeal, but stated that "pursuant to state and federal regulations, we require you to secure written authorization from the member in order to submit the appeal on the member's behalf." Although United knew that, as the assignee of Patient A's benefits under the plan, FASA was not required to obtain such a written authorization from the patient, FASA obtained and submitted such an authorization from Patient A.

On November 3, 2010, United responded to FASA's appeal in a letter stating that "[t]he plan covers reasonable charges for therapeutic treatment of sickness or injury. The reasonable charge is based on amounts charged by other providers for similar services or supplies in your area." According to United, it had "already paid the allowed amount of this claim" and therefore "the original determination remains unchanged, and is upheld."

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1    Thus, United represented that the plan requires reimbursement based on UCR and that the

2    reimbursement amount for Patient A was calculated based on UCR, when in fact United

3    knew that the reimbursement was calculated using a methodology that does not reflect

4    UCR.  According to United's own statements in this litigation, as of at least March 2010,

5    United reimbursed services provided by FASA pursuant to either the "highest in-network

6    rate" methodology or the MNRP methodology, neither of which constitute UCR.

7    Consequently, United's statement in its appeal response letter was false and/or misleading,

8    and United deprived FASA of the knowledge with which FASA could reasonably and/or

9    effectively challenge the flawed methodology that United used to reimburse FASA's

10   claim.

11        Furthermore, United's November 3 letter also provided "an explanation of our

12   process for determining reasonable and customary (R&C) charges."  According to United:

13        Our process is based upon data we license through Ingenix, a subsidiary of
          UnitedHealth Group.  Your benefit plan defines 'reasonable and customary
14        charge' as:

15        An amount measured and determined by Ingenix, by comparing the actual
          fee for the service or supply with the prevailing charges made for it.  The
16        Company determines the prevailing charges.  It takes into account all
          pertinent factors including: [(i)] The complexity of the service[; (ii)] The
17        range of services provided[; and (iii)] The most frequent charge level in the
          provider's location and in other areas having similar medical experience.

18        We derive reasonable and customary charges from a database of provider-
19        billed charges for professional healthcare services.  Ingenix maintains the
          database.  Provider data is collected from major healthcare payer
20        organizations, by zip code areas in all 50 states.  This data is updated every
          six months.  The database we use contains more that 9 million records.

21        To the extent that United relied on data from the Ingenix Database to determine the

22   reimbursement to FASA for Patient A, United knew that the Ingenix Database was flawed,

23   was not designed to price claims, and did not constitute a legitimate and proper means of

24   calculating UCR.  In addition, to the extent that the claim was not reimbursed using the

25   Ingenix Database, but, rather, was processed using the "highest in-network rate" method or

26   the MNRP method, as claimed by United in this litigation, the OMFS method or any other

27   method, then United's statement in its appeal response letter was blatantly false,

28

misleading and/or fraudulent, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

(b)     Patient B came to FASA for a surgical procedure in February 2010.  Prior to the procedure, FASA obtained an assignment of benefits from Patient B and, following its regular business practice, contacted United to verify Patient B's eligibility and out-of-network benefits through the Agilent Plan, which, on information and belief, provided for payment of out-of-network benefits for Patient at 70% of UCR (after any applicable deductibles and up to any annual out-of-pocket maximum).  United verified Patient B's eligibility and benefits.  Thereafter, in reasonable reliance on this eligibility and benefit verification, FASA provided its services to Patient B. FASA billed United in a timely manner, and the total charges for FASA's services were $24,495.00.  Of the total charges, United paid only $6,621.30 – or approximately 27% of the total charges – for the services provided to Patient B.

FASA timely appealed the claim reimbursement, and, on information and belief, United responded to FASA that it had received FASA's appeal, but stated that "pursuant to state and federal regulations, we require you to secure written authorization from the member in order to submit the appeal on the member's behalf." Although United knew that, as the assignee of Patient B's benefits under the plan, FASA was not required to obtain such a written authorization from the patient, FASA obtained and submitted such an authorization from Patient B.

On October 8, 2010, United responded to FASA's appeal in a letter stating that "[t]he plan covers reasonable charges for therapeutic treatment of sickness or injury.  The reasonable charge is based on amounts charged by other providers for similar services or supplies in your area."  According to United, it had "already paid the allowed amount of this claim" and therefore "the original determination remains unchanged, and is upheld."  Thus, United represented that the plan requires reimbursement based on UCR and that the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

reimbursement amount for Patient B was calculated based on UCR, when in fact United

knew that the reimbursement was calculated using a methodology that does not reflect

UCR.  According to United's own statements in this litigation, as of at least March 2010,

United reimbursed services provided by FASA pursuant to either the "highest in-network

rate" methodology or the MNRP methodology, neither of which constitute UCR.

Consequently, United's statement in its appeal response letter was false and/or misleading,

and United deprived FASA of the knowledge with which FASA could reasonably and/or

effectively challenge the flawed methodology that United used to reimburse FASA's

claim.

Furthermore, United's October 8 letter also provided "an explanation of our

process for determining reasonable and customary (R&C) charges."  According to United:

> Our process is based upon data we license through Ingenix, a subsidiary of
> UnitedHealth Group.  Your benefit plan defines 'reasonable and customary
> charge' as:
>
> An amount measured and determined by Ingenix, by comparing the actual
> fee for the service or supply with the prevailing charges made for it.  The
> Company determines the prevailing charges.  It takes into account all
> pertinent factors including: [(i)] The complexity of the service[; (ii)] The
> range of services provided[; and (iii)] The most frequent charge level in the
> provider's location and in other areas having similar medical experience.
>
> We derive reasonable and customary charges from a database of provider-
> billed charges for professional healthcare services.  Ingenix maintains the
> database.  Provider data is collected from major healthcare payer
> organizations, by zip code areas in all 50 states.  This data is updated every
> six months.  The database we use contains more that 9 million records.

To the extent that United relied on data from the Ingenix Database to determine the

reimbursement to FASA for Patient B, United knew that the Ingenix Database was flawed,

was not designed to price claims, and did not constitute a legitimate and proper means of

calculating UCR.  In addition, to the extent that the claim was not reimbursed using the

Ingenix Database, but, rather, was processed using the "highest in-network rate" method or

the MNRP method, as claimed by United in this litigation, the OMFS method or any other

method, then United's statement in its appeal response letter was blatantly false,

misleading and/or fraudulent, and United deprived FASA of the knowledge with which

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

In addition, and utterly inconsistent with the representations outlined above, United's October 8 response letter also stated that the claim "was paid as a global fee in compliance with the State of California's Ambulatory Surgical Center Pricing standards. The usual and customary allowables were determined by the State of California. The rates appear to be triple the Medicare allowable amount for the service provided although to determine the exact formulation for reimbursement the State of California should be contacted. United Healthcare paid the maximum allowable for the services provided." To the extent that United relied on the OMFS methodology or any other state-adopted fee schedule to reimburse FASA for Patient B, United knew that such a methodology did not constitute a legitimate and proper means of calculating UCR. In addition, to the extent that the reimbursement for the claim was not determined by the State of California, was not paid to comply with State of California requirements, was not the maximum amount United was allowed to pay FASA by state law or regulations, or was processed using the "highest in-network rate" method, the MNRP method, or any other method, then United's statement in its appeal response letter was blatantly false, misleading and/or fraudulent, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology used by United to reimburse FASA's claim.

(c)     Patient C came to FASA for a surgical procedure in June 2010. Prior to the procedure, FASA obtained an assignment of benefits from Patient C, as well as an authorization to appeal United's benefit determination as Patient C's designated representative. Following its regular business practice, FASA contacted United to verify Patient C's eligibility and out-of-network benefits through the Apple Plan, which, on information and belief, provided for payment of out-of-network benefits for Patient C at 70% of UCR (after any applicable deductibles and up to any annual out-of-pocket maximum). United verified Patient C's eligibility and benefits. Thereafter, in reasonable

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

reliance on this eligibility and benefit verification, FASA provided its services to Patient C. FASA billed United in a timely manner, and the total charges for FASA's services were $25,658.41.

In a "Claim Status" report that FASA accessed electronically at UnitedHealthcare Online, to which United directed FASA for information regarding the status of its claims, United stated that $20,939.41 of the total billed charges were not covered and that only $3,303.30.00 – or approximately 13% of the total charges – would be paid for the services provided to Patient C.  The reason provided by United in the on-line status form for the non-covered portion of FASA's charge read as follows: "This service is cosmetic and does not meet coverage requirements.  Therefore, no benefits are available for this service." However, United knew that the service rendered to Patient C was not cosmetic, and in fact was covered under the plan, as evidenced by United's payment of even a portion of the charges. Consequently, United's statement in its "Claims Status" report was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

Likewise, in the EOB that United sent to FASA dated August 24, 2010, United stated that the "Amount Allowed" was only $4,719.00, and, after further applying the out-of-network benefit level, United paid only $3,303.30 for the claim.  However, the EOB provided a different explanation for the non-covered portion of FASA's claim.  The EOB stated merely that the "plan covers reasonable charges," which, according to the EOB, was "based on amounts charged by other providers for similar services or supplies," and that "payment of benefits has been made in accordance with the terms of the managed care system."  Thus, United represented that the plan requires reimbursement based on UCR and that the reimbursement amount for Patient C was calculated based on UCR, when in fact United knew that the reimbursement was calculated using a methodology that does not reflect UCR.  According to United's own statements in this litigation, as of at least March 2010, United reimbursed services provided by FASA pursuant to either the "highest in-

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

network rate" methodology or the MNRP methodology, neither of which constitute UCR. Consequently, United's statement in its EOB was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

FASA timely appealed the claim reimbursement. On September 13, United sent FASA a letter acknowledging receipt of an appeal.  On September 15, United further responded to FASA that "pursuant to state and federal regulations, we require you to secure written authorization from the member in order to submit the appeal on the member's behalf." Although United knew that, as the assignee of Patient C's benefits under the plan, FASA was not required to obtain such a written authorization from the patient, FASA obtained and submitted such an authorization from Patient C.

On October 5, 2010, United responded in a letter to FASA stating, without providing any substantive reasons as to why,  that United "reviewed your request about the above claim for [Patient C]. Based on our review, we determined that we processed this claim accurately.  No further payment is due from us because this claim was correctly processed according to the terms of the patient's health benefit plan."

On October 28, 2010, United further responded to FASA's appeals in a letter stating that "[t]he plan covers reasonable charges for therapeutic treatment of sickness or injury.  The reasonable charge is based on amounts charged by other providers for similar services or supplies in your area."  According to United, it "confirmed that the claim(s) was processed correctly." Thus, United represented that the plan requires reimbursement based on UCR and that the reimbursement amount for Patient C was calculated based on UCR, when in fact United knew that the reimbursement was calculated using a methodology that does not reflect UCR.  According to United's own statements in this litigation, as of at least March 2010, United reimbursed services provided by FASA pursuant to either the "highest in-network rate" methodology or the MNRP methodology, neither of which constitute UCR.  Consequently, United's statement in its appeal response letter was false and/or misleading, and United deprived FASA of the knowledge with

which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

Furthermore, United's October 28 appeal response letter also states that the claim "was paid as a global fee in compliance with the State of California's Ambulatory Surgical Center Pricing standards. The usual and customary allowables were determined by the State of California.  The rates appear to be triple the Medicare allowable amount for the service provided although to determine the exact formulation for reimbursement the State of California should be contacted.  United Healthcare paid the maximum allowable for the services provided."  To the extent that United relied on the OMFS methodology or any other state-adopted fee schedule to reimburse FASA for Patient C, United knew that such a methodology did not constitute a legitimate and proper means of calculating UCR.  In addition, to the extent that the reimbursement for the claim was not determined by the State of California, was not paid to comply with State of California requirements, was not the maximum amount United was allowed to pay FASA by state law or regulations, or was processed using the "highest in-network rate" method, the MNRP method, or any other method, then United's statement in its appeal response letter was blatantly false, misleading and/or fraudulent, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

(d)      Patient D came to FASA for a surgical procedure in June 2010.  Prior to the procedure, FASA obtained an assignment of benefits from Patient D, as well as an authorization to appeal United's benefit determination as Patient D's designated representative.  Following its regular business practice, FASA contacted United to verify Patient D's eligibility and out-of-network benefits through the Cadence Plan, which, on information and belief, provided for payment of out-of-network benefits for Patient D at 70% of UCR (after any applicable deductibles and up to any annual out-of-pocket maximum).  United verified Patient D's eligibility and benefits.  Thereafter, in reasonable

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  reliance on this eligibility and benefit verification, FASA provided its services to Patient

2  D. FASA billed United in a timely manner, and the total charges for FASA's services were

3  $59,118.00.

4  　　　　In a "Claim Status" report that FASA accessed electronically at UnitedHealthcare

5  Online, to which United directed FASA for information regarding the status of its claims,

6  United stated that $52,758.00 of the total billed charges were not covered and that only

7  $5,860.00 – or approximately 10% of the total charges – would be paid for the services

8  provided to Patient D.  The reason provided by United in the on-line status form for the

9  non-covered portion of FASA's charge read as follows: "This service is cosmetic and does

10  not meet coverage requirements.  Therefore, no benefits are available for this service."

11  However, United knew that the service rendered to Patient D was not cosmetic, and in fact

12  was covered under the plan, as evidenced by United's payment of even a portion of the

13  charges. Consequently, United's statement in its "Claims Status" report was false and/or

14  misleading, and United deprived FASA of the knowledge with which FASA could

15  reasonably and/or effectively challenge the flawed methodology that United used to

16  reimburse FASA's claim.

17  　　　　Likewise, in the EOB that United sent to FASA dated August 24, 2010, United

18  stated that the "Amount Allowed" was only $6,360.00, and, after further applying the out-

19  of-network benefit level, United paid only $5,860.00 for the claim.  However, the EOB

20  provided a different explanation for the non-covered portion of FASA's claim.  The EOB

21  stated merely that the "plan covers reasonable charges," which, according to the EOB, was

22  "based on amounts charged by other providers for similar services or supplies," and that

23  "payment of benefits has been made in accordance with the terms of the managed care

24  system."  Thus, United represented that the plan requires reimbursement based on UCR

25  and that the reimbursement amount for Patient D was calculated based on UCR, when in

26  fact United knew that the reimbursement was calculated using a methodology that does not

27  reflect UCR.  According to United's own statements in this litigation, as of at least March

28  2010, United reimbursed services provided by FASA pursuant to either the "highest in-

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

network rate" methodology or the MNRP methodology, neither of which constitute UCR. Consequently, United's statement in its EOB was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

FASA timely appealed the claim reimbursement. On September 8, 2010, United responded in a letter to FASA stating, without providing any substantive reasons as to why, that United "reviewed your request about the above claim for [Patient D]. Based on our review, we determined that we processed this claim accurately.  No further payment is due from us because this claim was correctly processed according to the terms of the patient's health benefit plan."

FASA filed another appeal.  On September 13, 2010, United sent FASA a letter acknowledging receipt of an appeal, and on September 14, 2010, United further responded to FASA that "pursuant to state and federal regulations, we require you to secure written authorization from the member in order to submit the appeal on the member's behalf." Although United knew that, as the assignee of Patient D's benefits under the plan, FASA was not required to obtain such a written authorization from the patient, FASA obtained and submitted such an authorization from Patient D.

On September 15, 2010, United responded in a letter to FASA stating, without providing any substantive reasons as to why, that United "reviewed your request about the above claim for [Patient D]. Based on our review, we determined that we processed this claim accurately.  No further payment is due from us because we paid the allowed amount of $6,360.00 under the patient's health benefit plan." On September 16, 2010, United sent FASA a virtually identical letter.

On November 9, 2010, United sent FASA another appeal response letter, stating that it had "conducted a detailed review of the services from Ingenix" and that "[t]he plan covers reasonable charges for therapeutic treatment of sickness or injury.  The reasonable charge is based on amounts charged by other providers for similar services or supplies in your area."  According to United, it had "already paid the allowed amount of this claim"

and therefore "the original determination remains unchanged, and is upheld."  Thus, United represented that the plan requires reimbursement based on UCR and that the reimbursement amount for Patient D was calculated based on UCR, when in fact United knew that the reimbursement was calculated using a methodology that does not reflect UCR.  According to United's own statements in this litigation, as of at least March 2010, United reimbursed services provided by FASA pursuant to either the "highest in-network rate" methodology or the MNRP methodology, neither of which constitute UCR.  Consequently, United's statement in its appeal response letter was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

Furthermore, to the extent that United relied on data from the Ingenix Database to determine the reimbursement to FASA for Patient D, United knew that the Ingenix Database was flawed, was not designed to price claims, and did not take constitute a legitimate and proper means of calculating UCR.  In addition, to the extent that the claim was not reimbursed using the Ingenix Database, but, rather, was processed using the "highest in-network rate" method or the MNRP method, as claimed by United in this litigation, the OMFS method or any other method, then United's statement in its appeal response letter was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

(e)     Patient E came to FASA for a surgical procedure in May 2010.  Prior to the procedure, FASA obtained an assignment of benefits from Patient E, as well as an authorization to appeal United's benefit determination as Patient E's designated representative.  Following its regular business practice, FASA contacted United to verify Patient E's eligibility and out-of-network benefits through the Cisco Plan, which, on information and belief, provided for payment of out-of-network benefits for Patient E at

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

100% of UCR.  United verified Patient E's eligibility and benefits.  Thereafter, in reasonable reliance on this eligibility and benefit verification, FASA provided its services to Patient E. FASA billed United in a timely manner, and the total charges for FASA's services were $7,887.50.

In a "Claim Status" report that FASA accessed electronically at UnitedHealthcare Online, to which United directed FASA for information regarding the status of its claims, United stated that $5,844.50. of the total billed charges were not covered and that only $1,143.00 – or approximately 14% of the total charges – would be paid for the services provided to Patient E.  The reason provided by United in the on-line status form for the non-covered portion of FASA's charge read as follows: "This service is cosmetic and does not meet coverage requirements.  Therefore, no benefits are available for this service."  However, United knew that the service rendered to Patient E was not cosmetic, and in fact was covered under the plan, as evidenced by United's payment of even a portion of the charges. Consequently, United's statement in its "Claims Status" report was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

FASA timely appealed the claim reimbursement. On August 26, 2010, United responded in a letter to FASA stating, without providing any substantive reasons as to why,  that United "reviewed your request about the above claim for [Patient E]. Based on our review, we determined that we processed this claim accurately.  No further payment is due from us because this claim was correctly processed according to the terms of the patient's health benefit plan."

FASA filed another appeal.  On September 13, 2010, United sent FASA a letter acknowledging receipt of an appeal, and on October 7, 2010, United responded to FASA's appeal in a letter stating that "[t]he plan covers reasonable charges for therapeutic treatment of sickness or injury.  The reasonable charge is based on amounts charged by other providers for similar services or supplies in your area."  According to United, it had

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

"already paid the allowed amount of this claim" and therefore "the original determination remains unchanged, and is upheld." Thus, United represented that the plan requires reimbursement based on UCR and that the reimbursement amount for Patient E was calculated based on UCR, when in fact United knew that the reimbursement was calculated using a methodology that does not reflect UCR. According to United's own statements in this litigation, as of at least March 2010, United reimbursed services provided by FASA pursuant to either the "highest in-network rate" methodology or the MNRP methodology, neither of which constitute UCR. Consequently, United's statement in its appeal response letter was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

Furthermore, United's October 7, 2010 appeal response letter also states that the claim "was paid as a global fee in compliance with the State of California's Ambulatory Surgical Center Pricing standards. The usual and customary allowable were [sic] determined by the State of California. The rates appear to be triple the Medicare allowable amount for the service provided although to determine the exact formulation for reimbursement the State of California should be contacted. United Healthcare paid the maximum allowable for the services provided." To the extent that United relied on the OMFS methodology or any other state-adopted fee schedule to reimburse FASA for Patient E, United knew that such a methodology did not constitute a legitimate and proper means of calculating UCR. In addition, to the extent that the reimbursement for the claim was not determined by the State of California, was not paid to comply with State of California requirements, was not the maximum amount United was allowed to pay FASA by state law or regulations, or was processed using the "highest in-network rate" method, the MNRP method, or any other method, then United's statement in its appeal response letter was blatantly false, misleading and/or fraudulent, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

1

2

3

4

5

6

7

8

9

10

11

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(f)      Patient F came to FASA for a surgical procedure in June 2010.  Prior to the

procedure, FASA obtained an assignment of benefits from Patient F, as well as an

authorization to appeal United's benefit determination as Patient F's designated

representative.  Following its regular business practice, FASA contacted United to verify

Patient F's eligibility and out-of-network benefits through the Delta Plan, which, on

information and belief, provided for payment of out-of-network benefits for Patient F at

70% of UCR (after any applicable deductibles and up to any annual out-of-pocket

maximum).  United verified Patient F's eligibility and benefits.  Thereafter, in reasonable

reliance on this eligibility and benefit verification, FASA provided its services to Patient F.

FASA billed United in a timely manner, and the total charges for FASA's services were

$23,702.00.

In a "Claim Status" report that FASA accessed electronically at UnitedHealthcare

Online, to which United directed FASA for information regarding the status of its claims,

United stated that $14,243.00 of the total billed charges were not covered and that only

$7,938.94 – or approximately 33% of the total charges – would be paid for the services

provided to Patient F.  The reason provided by United in the on-line status form for the

non-covered portion of FASA's charge read as follows: "This service is cosmetic and does

not meet coverage requirements.  Therefore, no benefits are available for this service."

However, United knew that the service rendered to Patient F was not cosmetic, and in fact

was covered under the plan, as evidenced by United's payment of even a portion of the

charges. Consequently, United's statement in its "Claims Status" report was false and/or

misleading, and United deprived FASA of the knowledge with which FASA could

reasonably and/or effectively challenge the flawed methodology that United used to

reimburse FASA's claim.

Likewise, in the EOB that United sent to FASA dated August 23, 2010, United

stated that the "Amount Allowed" was only $9,459.00, and, after further applying the out-

of-network benefit level, United paid only $7,938.94 for the claim.  However, the EOB

provided a different explanation for the non-covered portion of FASA's claim.  The EOB

stated merely that the "plan covers reasonable charges," which, according to the EOB, was "based on amounts charged by other providers for similar services or supplies," and that "payment of benefits has been made in accordance with the terms of the managed care system." Thus, United represented that the plan requires reimbursement based on UCR and that the reimbursement amount for Patient F was calculated based on UCR, when in fact United knew that the reimbursement was calculated using a methodology that does not reflect UCR. According to United's own statements in this litigation, as of at least March 2010, United reimbursed services provided by FASA pursuant to either the "highest in-network rate" methodology or the MNRP methodology, neither of which constitute UCR. Consequently, United's statement in its EOB was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

FASA timely appealed the claim reimbursement. On September 28, 2010, United responded in a letter to FASA stating, without providing any substantive reasons as to why, that United "reviewed your request about the above claim for [Patient F]. Based on our review, we determined that we processed this claim accurately. No further payment is due from us because this claim was correctly processed according to the terms of the patient's health benefit plan."

FASA filed another appeal. On information and belief, United responded to FASA that it had received FASA's appeal, but stated that "pursuant to state and federal regulations, we require you to secure written authorization from the member in order to submit the appeal on the member's behalf." Although United knew that, as the assignee of Patient F's benefits under the plan, FASA was not required to obtain such a written authorization from the patient, FASA obtained and submitted such an authorization from Patient F.

On October 29, 2010, United responded to FASA's appeal in a letter stating that "[t]he plan covers reasonable charges for therapeutic treatment of sickness or injury. The reasonable charge is based on amounts charged by other providers for similar services or

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

supplies in your area." According to United, it had "already paid the allowed amount of this claim" and therefore "the original determination remains unchanged, and is upheld." Thus, United represented that the plan requires reimbursement based on UCR and that the reimbursement amount for Patient F was calculated based on UCR, when in fact United knew that the reimbursement was calculated using a methodology that does not reflect UCR. According to United's own statements in this litigation, as of at least March 2010, United reimbursed services provided by FASA pursuant to either the "highest in-network rate" methodology or the MNRP methodology, neither of which constitute UCR. Consequently, United's statement in its appeal response letter was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

Furthermore, United's October 29, 2010 letter also provided "an explanation of our process for determining reasonable and customary (R&C) charges." According to United:

> Our process is based upon data we license through Ingenix, a subsidiary of UnitedHealth Group. Your benefit plan defines 'reasonable and customary charge' as:

> An amount measured and determined by Ingenix, by comparing the actual fee for the service or supply with the prevailing charges made for it. The Company determines the prevailing charges. It takes into account all pertinent factors including: [(i)] The complexity of the service[; (ii)] The range of services provided[; and (iii)] The most frequent charge level in the provider's location and in other areas having similar medical experience.

> We derive reasonable and customary charges from a database of provider-billed charges for professional healthcare services. Ingenix maintains the database. Provider data is collected from major healthcare payer organizations, by zip code areas in all 50 states. This data is updated every six months. The database we use contains more that 9 million records.

To the extent that United relied on data from the Ingenix Database to determine the reimbursement to FASA for Patient F, United knew that the Ingenix Database was flawed, was not designed to price claims, and did not constitute a legitimate and proper means of calculating UCR. In addition, to the extent that the claim was not reimbursed using the Ingenix Database, but, rather, was processed using the "highest in-network rate" method or

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   the MNRP method, as claimed by United in this litigation, the OMFS method or any other

2   method, then United's statement in its appeal response letter was blatantly false,

3   misleading and/or fraudulent, and United deprived FASA of the knowledge with which

4   FASA could reasonably and/or effectively challenge the flawed methodology that United

5   used to reimburse FASA's claim.

6

7   (g)      Patient G came to FASA for a surgical procedure in May 2010.  Prior to the

8   procedure, FASA obtained an assignment of benefits from Patient G, as well as an

9   authorization to appeal United's benefit determination as Patient G's designated

10  representative.  Following its regular business practice, FASA contacted United to verify

11  Patient G's eligibility and out-of-network benefits through the Electronic Arts Plan, which,

12  on information and belief, provided for payment of out-of-network benefits for Patient G at

13  70% of UCR (after any applicable deductibles and up to any annual out-of-pocket

14  maximum).  United verified Patient G's eligibility and benefits.  Thereafter, in reasonable

15  reliance on this eligibility and benefit verification, FASA provided its services to Patient

16  G.  FASA billed United in a timely manner, and the total charges for FASA's services

17  were $54,976.00.

18          In a "Claim Status" report that FASA accessed electronically at UnitedHealthcare

19  Online, and to which United directed FASA for information regarding the status of its

20  claims, United stated that $48,616.00 of the total billed charges were not covered and that

21  only $6,360.00 – or approximately 12% of the total charges – would be paid for the

22  services provided to Patient G.  The reason provided by United in the on-line status form

23  for the non-covered portion of FASA's charge read as follows: "This service is cosmetic

24  and does not meet coverage requirements.  Therefore, no benefits are available for this

25  service."  However, United knew that the service rendered to Patient G was not cosmetic,

26  and in fact was covered under the plan, as evidenced by United's payment of even a

27  portion of the charges.  Consequently, United's statement in its "Claims Status" report was

28  false and/or misleading, and United deprived FASA of the knowledge with which FASA

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   could reasonably and/or effectively challenge the flawed methodology that United used to

2   reimburse FASA's claim.

3   FASA timely appealed the claim. On August 26, 2010, United responded in a letter

4   to FASA stating, without providing any substantive reasons as to why, that United

5   "reviewed your request about the above claim for [Patient G]. Based on our review, we

6   determined that we processed this claim accurately.  No further payment is due from us

7   because this claim was correctly processed according to the terms of the patient's health

8   benefit plan."

9   FASA thereafter appealed again.  On October 13, 2010, United sent FASA a

10  second response letter stating that it had "conducted a detailed review of the services from

11  Ingenix" and that "[t]he plan covers reasonable charges for therapeutic treatment of

12  sickness or injury.  The reasonable charge is based on amounts charged by other providers

13  for similar services or supplies in your area."  According to United, it had "already paid the

14  allowed amount of this claim" and therefore "the original determination remains

15  unchanged, and is upheld."  Thus, United represented that the plan requires reimbursement

16  based on UCR and that the reimbursement amount for Patient G was calculated based on

17  UCR, when in fact United knew that the reimbursement was calculated using a

18  methodology that does not reflect UCR.  According to United's own statements in this

19  litigation, as of at least March 2010, United reimbursed services provided by FASA

20  pursuant to either the "highest in-network rate" methodology or the MNRP methodology,

21  neither of which constitute UCR.  Consequently, United's statement in its appeal response

22  letter was false and/or misleading, and United deprived FASA of the knowledge with

23  which FASA could reasonably and/or effectively challenge the flawed methodology that

24  United used to reimburse FASA's claim.

25  Furthermore, to the extent that United relied on data from the Ingenix Database to

26  determine the reimbursement to FASA for Patient G, United knew that the Ingenix

27  Database was flawed, was not designed to price claims, and did not take constitute a

28  legitimate and proper means of calculating UCR.  In addition, to the extent that the claim

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

was not reimbursed using the Ingenix Database, but, rather, was processed using the "highest in-network rate" method or the MNRP method, as claimed by United in this litigation, or the OMFS method, then United's statement in its appeal response letter was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

(h)     Patient H came to FASA for a surgical procedure in November 2010.  Prior to the procedure, FASA obtained an assignment of benefits from Patient H and, following its regular business practice, contacted United to verify Patient H's eligibility and out-of-network benefits through the Hewlett-Packard Plan, which, on information and belief, provided for payment of out-of-network benefits for Patient H at 70% of UCR (after any applicable deductibles and up to any annual out-of-pocket maximum).  United verified Patient H's eligibility and benefits.  Thereafter, in reasonable reliance on this eligibility and benefit verification, FASA provided its services to Patient H.  FASA billed United in a timely manner, and the total charges for FASA's services were $4,770.00.

In the EOB that United sent to FASA dated December 21, 2010, United stated that the "Amount Allowed" was only $2,043.00, and, after further applying a patient deductible and the out-of-network benefit level, United paid only $730.10 – or approximately 15% of the total charges – for the claim.  The EOB included no explanation for United's benefit determination.  However, the EOB included the remark code "HZ," which is the code that United frequently uses to indicate that the plan at issue "covers reasonable charges" and that such reasonable charges are "based on amounts charged by other providers for similar services or supplies."  Thus, to the extent that United used included remark code HZ on the EOB for that purpose, United represented that the plan requires reimbursement based on UCR and that the reimbursement amount for Patient H was calculated based on UCR, when in fact United knew that the reimbursement was calculated using a methodology that does not reflect UCR.  According to United's own statements in this litigation, as of at

least March 2010, United reimbursed services provided by FASA pursuant to either the "highest in-network rate" methodology or the MNRP methodology, neither of which constitute UCR. Consequently, United's statement in its EOB was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

FASA timely appealed the claim reimbursement. On March 21, 2011, United sent FASA a letter acknowledging receipt of an appeal, and on March 22, 2011, United responded to FASA that "pursuant to state and federal regulations, we require you to secure written authorization from the member in order to submit the appeal on the member's behalf." Although United knew that, as the assignee of Patient H's benefits under the plan, FASA was not required to obtain such a written authorization from the patient, FASA obtained and submitted such an authorization from Patient H.

On March 25, 2011, United responded in a letter to FASA stating, without providing any substantive reasons as to why, that United "reviewed your request about the above claim for [Patient H]. Based on our review, we determined that we processed this claim accurately. No further payment is due from us because this claim was correctly processed according to the terms of the patient's health benefit plan."

On March 31, 2011, United again acknowledged receipt of an appeal from FASA and responded to FASA that "pursuant to state and federal regulations, we require you to secure written authorization from the member in order to submit the appeal on the member's behalf." Also, on April 6, 2011, United sent FASA another letter acknowledging receipt of an appeal. Then, on April 28, 2011, United responded to FASA's appeal in a letter stating that "[the] plan covers reasonable charges for therapeutic treatment of sickness or injury. The reasonable charge is based on amounts charged by other providers for similar services or supplies in your area." According to United, it had "already paid the allowed amount of this claim" and therefore "the original determination remains unchanged, and is upheld." Thus, United represented that the plan requires reimbursement

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

based on UCR and that the reimbursement amount for Patient H was calculated based on UCR, when in fact United knew that the reimbursement was calculated using a methodology that does not reflect UCR.  According to United's own statements in this litigation, as of at least March 2010, United reimbursed services provided by FASA pursuant to either the "highest in-network rate" methodology or the MNRP methodology, neither of which constitute UCR.  Consequently, United's statement in its appeal response letter was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

On May 2, 2011, and again on May 13, 2011, United sent letters to FASA "in response to your letter regarding coverage of the service(s) that [Patient H] received from [FASA]," which merely stated that United had "previously reviewed this coverage decision, and sent you a letter explaining our decision."  However, also on May 13, 2011, United sent FASA another appeal response letter stating, once again, that "[t]he plan covers reasonable charges for therapeutic treatment of sickness or injury.  The reasonable charge is based on amounts charged by other providers for similar services or supplies in your area."  According to United, it had "already paid the allowed amount of this claim" and therefore "the original determination remains unchanged, and is upheld."  Thus, United represented that the plan requires reimbursement based on UCR and that the reimbursement amount for Patient H was calculated based on UCR, when in fact United knew that the reimbursement was calculated using a methodology that does not reflect UCR.  According to United's own statements in this litigation, as of at least March 2010, United reimbursed services provided by FASA pursuant to either the "highest in-network rate" methodology or the MNRP methodology, neither of which constitute UCR. Consequently, United's statement in its appeal response letter was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology used by United to reimburse FASA's claim.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

(i)      Patient I came to FASA for a surgical procedure in November 2010.  Prior to the procedure, FASA obtained an assignment of benefits from Patient I and, following its regular business practice, contacted United to verify Patient I's eligibility and out-of-network benefits through the Johnson Matthey Plan, which, in information and belief, provided for payment of out-of-network benefits for Patient H at 75% of UCR (after any applicable deductibles and up to any annual out-of-pocket maximum).  United verified Patient I's eligibility and benefits.  Thereafter, in reasonable reliance on this eligibility and benefit verification, FASA provided its services to Patient I.  FASA billed United in a timely manner, and the total charges for FASA's services were $91,235.00.

In the EOB that United sent to FASA dated December 14, 2010, United stated that the "Amount Allowed" was only $6,360.00, and, after further applying the out-of-network benefit level, United paid only $4,770.00 – or approximately 5% of the total charges – for the claim.    The EOB included no explanation for United's benefit determination.  However, the EOB included the remark code "HZ," which is the code that United frequently uses to indicate that the plan at issue "covers reasonable charges" and that such reasonable charges are "based on amounts charged by other providers for similar services or supplies."  Thus, to the extent that United used included remark code HZ on the EOB for that purpose, United represented that the plan requires reimbursement based on UCR and that the reimbursement amount for Patient I was calculated based on UCR, when in fact United knew that the reimbursement was calculated using a methodology that does not reflect UCR.  According to United's own statements in this litigation, as of at least March 2010, United reimbursed services provided by FASA pursuant to either the "highest in-network rate" methodology or the MNRP methodology, neither of which constitute UCR.  Consequently, United's statement in its EOB was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

FASA timely appealed the claim reimbursement.  On January 20, 2011, United sent FASA a letter acknowledging receipt of an appeal request, and did so again on January 21,

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

2011, at which time it also stated that "pursuant to state and federal regulations, we require you to secure written authorization from the member in order to submit the appeal on the member's behalf."  Although United knew that, as the assignee of Patient I's benefits under the plan, FASA was not required to obtain such a written authorization from the patient, FASA obtained and submitted such an authorization from Patient I.  On April 12, 2011, United responded in a letter to FASA stating, without providing any substantive reasons as to why,  that United "reviewed your request about the above claim for [Patient I]. Based on our review, we determined that we processed this claim accurately.  No further payment is due from us because this claim was correctly processed according to the terms of the patient's health benefit plan."

FASA timely filed another appeal.  On April 28, 2011, United responded to FASA's appeal in a letter stating that "[t]he plan covers reasonable charges for therapeutic treatment of sickness or injury.  The reasonable charge is based on amounts charged by other providers for similar services or supplies in your area."  According to United, it had "already paid the allowed amount of this claim" and therefore its "prior payment decision for this service(s) is therefore unchanged, and this determination stands as a final level of appeal."  The April 28 letter further advised FASA that it had "exhausted all levels of appeal" and that "[t]here are no further appeal steps available."   Thus, United represented that the plan requires reimbursement based on UCR and that the reimbursement amount for Patient I was calculated based on UCR, when in fact United knew that the reimbursement was calculated using a methodology that does not reflect UCR.  According to United's own statements in this litigation, as of at least March 2010, United reimbursed services provided by FASA pursuant to either the "highest in-network rate" methodology or the MNRP methodology, neither of which constitute UCR.  Consequently, United's statement in its appeal response letter was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   (j)     Patient J came to FASA for a surgical procedure in February 2010.  Prior to the

2   procedure, FASA obtained an assignment of benefits from Patient J and, following its

3   regular business practice, contacted United to verify Patient J's eligibility and out-of-

4   network benefits through the Oracle Plan, which, on information and belief, provided for

5   payment of out-of-network benefits for Patient J at 70% of UCR (after any applicable

6   deductibles and up to any annual out-of-pocket maximum).  United verified Patient J's

7   eligibility and benefits.  Thereafter, in reasonable reliance on this eligibility and benefit

8   verification, FASA provided its services to Patient J. FASA billed United in a timely

9   manner, and the total charges for FASA's services were $12,306.00.

10        In a "Claim Status" report that FASA accessed electronically at UnitedHealthcare

11  Online, and to which United directed FASA for information regarding the status of its

12  claims, United stated that $10,263.00 of the total billed charges were not covered and that

13  only $1,430.10 – or approximately 12% of the total charges – would be paid for the

14  services provided to Patient J.  The reason provided by United in the on-line status form

15  for the non-covered portion of FASA's charge read as follows: "This service is cosmetic

16  and does not meet coverage requirements.  Therefore, no benefits are available for this

17  service."  However, United knew that the service rendered to Patient J was not cosmetic,

18  and in fact was covered under the plan, as evidenced by United's payment of even a

19  portion of the charges. Consequently, United's statement in its "Claims Status" report was

20  false and/or misleading, and United deprived FASA of the knowledge with which FASA

21  could reasonably and/or effectively challenge the flawed methodology that United used to

22  reimburse FASA's claim.

23        FASA timely appealed the claim. On information and belief, United responded to

24  FASA that it had received FASA's appeal, but stated that "pursuant to state and federal

25  regulations, we require you to secure written authorization from the member in order to

26  submit the appeal on the member's behalf." Although United knew that, as the assignee of

27  Patient J's benefits under the plan, FASA was not required to obtain such a written

28

SECOND AMENDED COMPLAINT

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

1    authorization from the patient, FASA obtained and submitted such an authorization from

2    Patient J.

3       On October 5, 2010, United sent FASA an appeal response letter stating that "[t]he

4    plan covers reasonable charges for therapeutic treatment of sickness or injury.  The

5    reasonable charge is based on amounts charged by other providers for similar services or

6    supplies in your area."  The letter further stated that for "non-network benefits," eligible

7    expenses are calculated "based on available data resources of competitive fees in that

8    geographic area." According to United, it had "already paid the allowed amount of this

9    claim" and therefore "the original determination remains unchanged, and is upheld."

10       Furthermore, United's October 5 appeal response letter also states that the claim

11    "was paid as a global fee in compliance with the State of California's Ambulatory Surgical

12    Center Pricing standards. The usual and customary allowables were determined by the

13    State of California.  The rates appear to be triple the Medicare allowable amount for the

14    service provided although to determine the exact formulation for reimbursement the State

15    of California should be contacted.  United Healthcare paid the maximum allowable for the

16    services provided."

17       On October 26, 2010, United sent FASA another letter acknowledging an appeal by

18    FASA.  On December 22, 2010, United sent FASA another appeal response letter

19    attaching, on information and belief, an internal United email purporting to explain why

20    the appeal was denied, which essentially repeated the contents of United's October 5 letter

21    as set forth above.

22       Thus, United represented in both appeal response letters that the plan requires

23    reimbursement based on UCR and that the reimbursement amount for Patient J was

24    calculated based on UCR, when in fact United knew that the reimbursement was calculated

25    using a methodology that does not reflect UCR.  According to United's own statements in

26    this litigation, as of at least March 2010, United reimbursed services provided by FASA

27    pursuant to either the "highest in-network rate" methodology or the MNRP methodology,

28    neither of which constitute UCR.  Consequently, United's statements in its appeal response

letters were false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

Furthermore, to the extent that United relied on the OMFS methodology or any other state-adopted fee schedule to reimburse FASA for Patient J, United knew that such a methodology did not constitute a legitimate and proper means of calculating UCR. In addition, to the extent that the reimbursement for the claim was not determined by the State of California, was not paid to comply with State of California requirements, and was not the maximum allowable by state law or regulations, or was processed using the "highest in-network rate" method, the MNRP method, or any other method, then United's statements in its appeal response letters were false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

(k)     Patient K came to FASA for a surgical procedure in July 2010. Prior to the procedure, FASA obtained an assignment of benefits from Patient K and, following its regular business practice, contacted United to verify Patient K's eligibility and out-of-network benefits through the Oracle Plan, which, on information and belief, provided for payment of out-of-network benefits for Patient K at 70% of UCR (after any applicable deductibles and up to any annual out-of-pocket maximum). United verified Patient K's eligibility and benefits. Thereafter, in reasonable reliance on this eligibility and benefit verification, FASA provided its services to Patient K. FASA billed United in a timely manner, and the total charges for FASA's services were $80,644.00.

In a "Claim Status" report that FASA accessed electronically at UnitedHealthcare Online, to which United directed FASA for information regarding the status of its claims, United stated that $74,284.00 of the total billed charges were not covered and that only $4,452.00 – or approximately 6% of the total charges – would be paid for the services provided to Patient K. The reason provided by United in the on-line status form for the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

non-covered portion of FASA's charge read as follows: "This service is cosmetic and does not meet coverage requirements.  Therefore, no benefits are available for this service." However, United knew that the service rendered to Patient K was not cosmetic, and in fact was covered under the plan, as evidenced by United's payment of even a portion of the charges. Consequently, United's statement in its "Claims Status" report was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

Likewise, in the EOB that United sent to FASA dated August 31, 2010, United stated that the "Amount Allowed" was only $6,360.00, and, after further applying the out-of-network benefit level, United paid only $4,452.00 for the claim.  However, the EOB provided a different explanation for the non-covered portion of FASA's claim.  The EOB stated that the "plan covers reasonable charges," which, according to the EOB, was "based on amounts charged by other providers for similar services or supplies," and that "payment of benefits has been made in accordance with the terms of the managed care system." Thus, United represented that the plan requires reimbursement based on UCR and that the reimbursement amount for Patient K was calculated based on UCR, when in fact United knew that the reimbursement was calculated using a methodology that does not reflect UCR.  According to United's own statements in this litigation, as of at least March 2010, United reimbursed services provided by FASA pursuant to either the "highest in-network rate" methodology or the MNRP methodology, neither of which constitute UCR. Consequently, United's statement in its EOB was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

FASA timely appealed the claim reimbursement. On September 8, 2010, United responded in a letter to FASA stating, without providing any substantive reasons as to why,  that United "reviewed your request about the above claim for [Patient K]. Based on our review, we determined that we processed this claim accurately.  No further payment is

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1    due from us because this claim was correctly processed according to the terms of the

2    patient's health benefit plan."

3         FASA filed another appeal.  On September 13, 2010, United sent FASA a letter

4    acknowledging receipt of an appeal.  On information and belief, United further responded

5    to FASA that it had received FASA's appeal, but stated that "pursuant to state and federal

6    regulations, we require you to secure written authorization from the member in order to

7    submit the appeal on the member's behalf." Although United knew that, as the assignee of

8    Patient K's benefits under the plan, FASA was not required to obtain such a written

9    authorization from the patient, FASA obtained and submitted such an authorization from

10   Patient K.

11        On September 28, 2010, United responded in a letter to FASA stating, without

12   providing any substantive reasons as to why,  that United "reviewed your request about the

13   above claim for [Patient K]. Based on our review, we determined that we processed this

14   claim accurately.  No further payment is due from us because this claim was correctly

15   processed according to the terms of the patient's health benefit plan."

16        On October 27, 2010, United further responded to FASA's appeal in a letter stating

17   that "[t]he plan covers reasonable charges for therapeutic treatment of sickness or injury.

18   The reasonable charge is based on amounts charged by other providers for similar services

19   or supplies in your area."  According to United, it had "already paid the allowed amount of

20   this claim" and therefore "the original determination remains unchanged, and is upheld."

21   Thus, United represented that the plan requires reimbursement based on UCR and that the

22   reimbursement amount for Patient K was calculated based on UCR, when in fact United

23   knew that the reimbursement was calculated using a methodology that does not reflect

24   UCR.  According to United's own statements in this litigation, as of at least March 2010,

25   United reimbursed services provided by FASA pursuant to either the "highest in-network

26   rate" methodology or the MNRP methodology, neither of which constitute UCR.

27   Consequently, United's statement in its appeal response letter was false and/or misleading,

28   and United deprived FASA of the knowledge with which FASA could reasonably and/or

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

effectively challenge the flawed methodology that United used to reimburse FASA's claim.

Furthermore, United's October 27 letter also provided "an explanation of our process for determining reasonable and customary (R&C) charges." According to United:

> Our process is based upon data we license through Ingenix, a subsidiary of UnitedHealth Group. Your benefit plan defines 'reasonable and customary charge' as:

> An amount measured and determined by Ingenix, by comparing the actual fee for the service or supply with the prevailing charges made for it. The Company determines the prevailing charges. It takes into account all pertinent factors including: [(i)] The complexity of the service[; (ii)] The range of services provided[; and (iii)] The most frequent charge level in the provider's location and in other areas having similar medical experience.

> We derive reasonable and customary charges from a database of provider-billed charges for professional healthcare services. Ingenix maintains the database. Provider data is collected from major healthcare payer organizations, by zip code areas in all 50 states. This data is updated every six months. The database we use contains more that 9 million records.

To the extent that United relied on data from the Ingenix Database to determine the reimbursement to FASA for Patient K, United knew that the Ingenix Database was flawed, was not designed to price claims, and did not constitute a legitimate and proper means of calculating UCR. In addition, to the extent that the claim was not reimbursed using the Ingenix Database, but, rather, was processed using the "highest in-network rate" method or the MNRP method, as claimed by United in this litigation, the OMFS method or any other method, then United's statement in its appeal response letter was blatantly false, misleading and/or fraudulent, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

(l)     Patient L came to FASA for a surgical procedure in November 2010. Prior to the procedure, FASA obtained an assignment of benefits from Patient L and, following its regular business practice, contacted United to verify Patient L's eligibility and out-of-network benefits through the Synopsys Plan, which, on information and belief, provided

for payment of out-of-network benefits for Patient L at 70% of UCR (after any applicable deductibles and up to any annual out-of-pocket maximum). United verified Patient L's eligibility and benefits. Thereafter, in reasonable reliance on this eligibility and benefit verification, FASA provided its services to Patient L. FASA billed United in a timely manner, and the total charges for FASA's services were $4,770.00.

In a "Claim Status" report that FASA accessed electronically at UnitedHealthcare Online, to which United directed FASA for information regarding the status of its claims, United stated that $2,727.00 of the total billed charges were not covered and that only $1,325.10 – or approximately 28% of the total charges – would be paid for the services provided to Patient L. The reason provided by United in the on-line status form for the non-covered portion of FASA's charge read as follows: "This service is cosmetic and does not meet coverage requirements. Therefore, no benefits are available for this service." However, United knew that the service rendered to Patient L was not cosmetic, and in fact was covered under the plan, as evidenced by United's payment of even a portion of the charges. Consequently, United's statement in its "Claims Status" report was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

Likewise, in the EOB that United sent to FASA dated December 21, 2010, United stated that the "Amount Allowed" was only $2,043.00, and, after further applying a patient deductible and the out-of-network benefit level, United paid only $1,325.10 for the claim. However, the EOB provided a different explanation for the non-covered portion of FASA's claim. The EOB stated merely that the "plan covers reasonable charges," which, according to the EOB, was "based on amounts charged by other providers for similar services or supplies," and that "payment of benefits has been made in accordance with the terms of the managed care system." Thus, United represented that the plan requires reimbursement based on UCR and that the reimbursement amount for Patient L was calculated based on UCR, when in fact United knew that the reimbursement was calculated

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX:  (310) 551-8181

using a methodology that does not reflect UCR.  According to United's own statements in this litigation, as of at least March 2010, United reimbursed services provided by FASA pursuant to either the "highest in-network rate" methodology or the MNRP methodology, neither of which constitute UCR.  Consequently, United's statement in its EOB was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

FASA timely appealed the claim reimbursement. On March 21, 2011, United acknowledged receipt of an appeal from FASA, and did so again on April 6, 2011.  On April 7, 2010, United responded in a letter to FASA stating, without providing any substantive reasons as to why,  that United "reviewed your request about the above claim for [Patient L]. Based on our review, we determined that we processed this claim accurately.  No further payment is due from us because this claim was correctly processed according to the terms of the patient's health benefit plan."

On May 2, 2011, United sent FASA a letter stating that, despite its earlier acknowledgment of FASA's appeal and it's response to FASA's appeal, "[u]pon further review of your request, we determined the questions and concerns in your correspondence do not qualify as an appeal."  On the same day, however, United sent a separate letter to FASA stating that it had received FASA's correspondence "regarding coverage of the service(s) that [Patient L] received," that "a review of the coverage is currently in progress," and that FASA "should expect a letter explaining our coverage decision on this matter." On May 9, 2011, United once again sent a response letter to FASA stating, without providing any substantive reasons as to why, that United "reviewed your request about the above claim for [Patient L]. Based on our review, we determined that we processed this claim accurately.  No further payment is due from us because this claim was correctly processed according to the terms of the patient's health benefit plan."

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(m)     Patient M came to FASA for a surgical procedure in April 2010.  Prior to the procedure, FASA obtained an assignment of benefits from Patient M and, following its regular business practice, contacted United to verify Patient M's eligibility and out-of-network benefits through the Wells Fargo Plan, which, on information and belief, provided for payment of out-of-network benefits for Patient M at 60% of UCR (after any applicable deductibles and up to any annual out-of-pocket maximum).  United verified Patient M's eligibility and benefits.  Thereafter, in reasonable reliance on this eligibility and benefit verification, FASA provided its services to Patient M. FASA billed United in a timely manner, and the total charges for FASA's services were $40,428.00.

In a "Claim Status" report that FASA accessed electronically at UnitedHealthcare Online, and to which United directed FASA for information regarding the status of its claims, United stated that $30,969.00 of the total billed charges were not covered and that only $5,276.66 – or approximately 13% of the total charges – would be paid for the services provided to Patient M.  The reason provided by United in the on-line status form for the non-covered portion of FASA's charge read as follows: "This service is cosmetic and does not meet coverage requirements.  Therefore, no benefits are available for this service."  However, United knew that the service rendered to Patient M was not cosmetic, and in fact was covered under the plan, as evidenced by United's payment of even a portion of the charges. Consequently, United's statement in its "Claims Status" report was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and/or effectively challenge the flawed methodology that United used to reimburse FASA's claim.

FASA timely appealed the claim. On July 29, 2010, United responded in a letter to FASA stating, without providing any substantive reasons as to why,  that United "reviewed your request about the above claim for [Patient M]. Based on our review, we determined that we processed this claim accurately.  No further payment is due from us because this claim was correctly processed according to the terms of the patient's health benefit plan."

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  FASA submitted another appeal. On information and belief, United responded to

2  FASA that it had received FASA's appeal, but stated that "pursuant to state and federal

3  regulations, we require you to secure written authorization from the member in order to

4  submit the appeal on the member's behalf." Although United knew that, as the assignee of

5  Patient M's benefits under the plan, FASA was not required to obtain such a written

6  authorization from the patient, FASA obtained and submitted such an authorization from

7  Patient M.

8  On October 7, 2010, United sent FASA another appeal response letter stating that

9  "[t]he plan covers reasonable charges for therapeutic treatment of sickness or injury.  The

10  reasonable charge is based on amounts charged by other providers for similar services or

11  supplies in your area."  The letter further stated that for "out-of-network providers,"

12  eligible expenses are calculated "based on available data resources of competitive fees in

13  that geographic area," that "[t]hese fees are referred to as reasonable and customary, or

14  usual and customary," which "is defined as at below or at the 90th percentile of what

15  doctors, hospitals and medical care providers in a specific area charge for similar services."

16  According to United, it had "already paid the allowed amount of this claim" and therefore

17  "the original determination remains unchanged, and is upheld."  Thus, United represented

18  that the plan requires reimbursement based on UCR and that the reimbursement amount for

19  Patient M was calculated based on UCR, when in fact United knew that the reimbursement

20  was calculated using a methodology that does not reflect UCR.  According to United's

21  own statements in this litigation, as of at least March 2010, United reimbursed services

22  provided by FASA pursuant to either the "highest in-network rate" methodology or the

23  MNRP methodology, neither of which constitute UCR.  Consequently, United's statement

24  in its appeal response letter was false and/or misleading, and United deprived FASA of the

25  knowledge with which FASA could reasonably and/or effectively challenge the flawed

26  methodology that United used to reimburse FASA's claim.

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

(n)      Patient N came to FASA for a surgical procedure in November 2010.  Prior to the procedure, FASA obtained an assignment of benefits from Patient N and, following its regular business practice, contacted United to verify Patient N's eligibility and out-of-network benefits through the Spansion Plan, which, on information and belief, provided for payment of out-of-network benefits for Patient N at 70% of UCR (after any applicable deductibles and up to any annual out-of-pocket maximum). United verified Patient N's eligibility and benefits.  Thereafter, in reasonable reliance on this eligibility and benefit verification, FASA provided its services to Patient N.  FASA billed United in a timely manner, and the total charges for FASA's services were $10,550.00.

In the EOB that United sent to FASA dated December 21, 2010, United stated that the "Amount Allowed" was only $2,043.00, and, after further applying the out-of-network benefit level, United paid only $1,430.10 – or approximately 14% of the total charges – for the claim.  The EOB stated that the "plan covers reasonable charges," which, according to the EOB, was "based on amounts charged by other providers for similar services or supplies," and that "payment of benefits has been made in accordance with the terms of the managed care system."  Thus, United represented that the plan requires reimbursement based on UCR and that the reimbursement amount for Patient N was calculated based on UCR, when in fact United knew that the reimbursement was calculated using a methodology that does not reflect UCR.  According to United's own statements in this litigation, as of at least March 2010, United reimbursed services provided by FASA pursuant to either the "highest in-network rate" methodology or the MNRP methodology, neither of which constitute UCR.  Consequently, United's statement in its EOB was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and effectively challenge the flawed methodology that United used to reimburse FASA's claim.

FASA timely appealed the claim reimbursement. On March 21, 2011 United responded to FASA that it had received FASA's appeal, and did so again on March 28, 2011, at which time it also stated that "pursuant to state and federal regulations, we require

you to secure written authorization from the member in order to submit the appeal on the member's behalf." Although United knew that, as the assignee of Patient N's benefits under the plan, FASA was not required to obtain such a written authorization from the patient, FASA obtained and submitted such an authorization from Patient N. On March 31, 2011, United responded in a letter to FASA stating, without providing any substantive reasons as to why, that United "reviewed your request about the above claim for [Patient N]. Based on our review, we determined that we processed this claim accurately.  No further payment is due from us because the patient's health benefit plan does not cover services provided by a non-network physician, facility or other health care professional."

On April 6, 2011, United sent FASA a letter acknowledging receipt of an appeal request.  On April 14, 2011, United sent FASA another letter acknowledging receipt of an appeal request.  Despite its earlier letter informing FASA that the plan did not cover out-of-network benefits, on April 29, 2011, United sent FASA a response letter stating that "[t]he plan covers reasonable charges for therapeutic treatment of sickness or injury.  The reasonable charge is based on amounts charged by other providers for similar services or supplies in your area."  According to United, it had "already paid the allowed amount of this claim" and therefore "the original determination remains unchanged, and is upheld." Thus, United represented that the plan requires reimbursement based on UCR and that the reimbursement amount for Patient N was calculated based on UCR, when in fact United knew that the reimbursement was calculated using a methodology that does not reflect UCR.  According to United's own statements in this litigation, as of at least March 2010, United reimbursed services provided by FASA pursuant to either the "highest in-network rate" methodology or the MNRP methodology, neither of which constitute UCR. Consequently, United's statement in its appeal response letter was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and effectively challenge the flawed methodology that United used to reimburse FASA's claim.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Furthermore, United's April 29, 2011 letter also provided "an explanation of our process for determining reasonable and customary (R&C) charges." According to United:

> Our process is based upon data we license through Ingenix, a subsidiary of UnitedHealth Group. Your benefit plan defines 'reasonable and customary charge' as:

> An amount measured and determined by Ingenix, by comparing the actual fee for the service or supply with the prevailing charges made for it. The Company determines the prevailing charges. It takes into account all pertinent factors including: [(i)] The complexity of the service[; (ii)] The range of services provided[; and (iii)] The most frequent charge level in the provider's location and in other areas having similar medical experience.

> We derive reasonable and customary charges from a database of provider-billed charges for professional healthcare services. Ingenix maintains the database. Provider data is collected from major healthcare payer organizations, by zip code areas in all 50 states. This data is updated every six months. The database we use contains more that 9 million records.

To the extent that United relied on data from the Ingenix Database to determine the reimbursement to FASA for Patient N, United knew that the Ingenix Database was flawed, was not designed to price claims, and did not constitute a legitimate and proper means of calculating UCR. In addition, to the extent that the claim was not reimbursed using the Ingenix Database, but, rather, was processed using the "highest in-network rate" method or the MNRP method, as claimed by United in this litigation, the OMFS method or any other method, then United's statement in its appeal response letter was blatantly false, misleading and/or fraudulent, and United deprived FASA of the knowledge with which FASA could reasonably and effectively challenge the flawed methodology that United used to reimburse FASA's claim.

(o)     Patient O came to FASA for a surgical procedure in June 2010. Prior to the procedure, FASA obtained an assignment of benefits from Patient O, as well as an authorization to appeal United's benefit determination as Patient O's designated representative. Following its regular business practice, FASA contacted United to verify Patient O's eligibility and out-of-network benefits through the Foothill-De Anza Plan, which, on information and belief, provided for payment of out-of-network benefits for

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Patient O at 80% of UCR (after any applicable deductibles and up to any annual out-of-pocket maximum).   United verified Patient O's eligibility and benefits.  Thereafter, in reasonable reliance on this eligibility and benefit verification, FASA provided its services to Patient O.  FASA billed United in a timely manner, and the total charges for FASA's services were $12,915.00.

In a "Claim Status" report that FASA accessed at electronically at UnitedHealthcare Online, and to which United directed FASA for information regarding the status of its claims, United stated that $8,196.00 of the total billed charges were not covered and that only $3,775.20 – or approximately 29% of the total charges – would be paid for the services provided to Patient O.  The reason provided by United in the on-line status form for the non-covered portion of FASA's charge read as follows: "This service is cosmetic and does not meet coverage requirements.  Therefore, no benefits are available for this service."  However, United knew that the service rendered to Patient O was not cosmetic, and in fact was covered under the plan, as evidenced by United's payment of even a portion of the charges. Consequently, United's statement in its "Claims Status" report was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and effectively challenge the flawed methodology that United used to reimburse FASA's claim.

Likewise, in the EOB that United sent to FASA dated August 24, 2010, United stated that the "Amount Allowed" was only $4,719.00, and, after further applying the out-of-network benefit level, United paid only $3,775.20 for the claim.  However, the EOB provided a different explanation for the non-covered portion of FASA's claim.  The EOB stated that the "plan covers reasonable charges," which, according to the EOB, was "based on amounts charged by other providers for similar services or supplies," and that "payment of benefits has been made in accordance with the terms of the managed care system." Thus, United represented that the plan requires reimbursement based on UCR and that the reimbursement amount for Patient O was calculated based on UCR, when in fact United knew that the reimbursement was calculated using a methodology that does not reflect

UCR. According to United's own statements in this litigation, as of at least March 2010, United reimbursed services provided by FASA pursuant to either the "highest in-network rate" methodology or the MNRP methodology, neither of which constitute UCR. Consequently, United's statement in its EOB was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and effectively challenge the flawed methodology that United used to reimburse FASA's claim.

FASA timely appealed the claim. On September 20, 2011, United responded to FASA that it had received FASA's appeal, but stated that "pursuant to state and federal regulations, we require you to secure written authorization from the member in order to submit the appeal on the member's behalf." Although United knew that, as the assignee of Patient O's benefits under the plan, FASA was not required to obtain such a written authorization from the patient, FASA obtained and submitted such an authorization from Patient O.

On October 7, 2010, United sent FASA an appeal response letter stating that "[t]he plan covers reasonable charges for therapeutic treatment of sickness or injury. The reasonable charge is based on amounts charged by other providers for similar services or supplies in your area." According to United, it had "already paid the allowed amount of this claim" and therefore "the original determination remains unchanged, and is upheld." Thus, United represented that the plan requires reimbursement based on UCR and that the reimbursement amount for Patient O was calculated based on UCR, when in fact United knew that the reimbursement was calculated using a methodology that does not reflect UCR. According to United's own statements in this litigation, as of at least March 2010, United reimbursed services provided by FASA pursuant to either the "highest in-network rate" methodology or the MNRP methodology, neither of which constitute UCR. Consequently, United's statement in its appeal response letter was false and/or misleading, and United deprived FASA of the knowledge with which FASA could reasonably and effectively challenge the flawed methodology that United used to reimburse FASA's claim.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  Furthermore, United's October 7 appeal response letter also states that the claim

2  "was paid as a global fee in compliance with the State of California's Ambulatory Surgical

3  Center Pricing standards. The usual and customary allowable were [sic] determined by the

4  State of California.  The rates appear to be triple the Medicare allowable amount for the

5  service provided although to determine the exact formulation for reimbursement the State

6  of California should be contacted.  United Healthcare paid the maximum allowable for the

7  services provided."  To the extent that United relied on the OMFS methodology or any

8  other state-adopted fee schedule to reimburse FASA for Patient O, United knew that such a

9  methodology did not constitute a legitimate and proper means of calculating UCR.  In

10  addition, to the extent that the reimbursement for the claim was not determined by the

11  State of California, was not paid to comply with State of California requirements, and was

12  not the maximum allowable by state law or regulations, or was processed using the

13  "highest in-network rate" method, the MNRP method, or any other method, then United's

14  statement in its appeal response letter was blatantly false, misleading and/or fraudulent,

15  and United deprived FASA of the knowledge with which FASA could reasonably and

16  effectively challenge the flawed methodology used by United to reimburse FASA's claim.

17  216.   In summary, Defendants' representations that FASA's claims were reimbursed

18  based on UCR rates were false and/or misleading.  From the time of verification of benefits

19  through the time that FASA's appeals were denied, the Defendants routinely and systematically

20  misrepresented that out-of-network benefits are reimbursed according to the UCR standard, and

21  misrepresented or concealed the true reimbursement methods.

22  **Defendants' Practices Unfairly Shift the Burden of Payment to the Patients**

23  217.   FASA is informed and believes that the members of the Health Plans typically pay

24  higher premiums to have the option to obtain the services of out-of-network providers than they

25  would pay if their options were limited to in-network providers (except in emergency

26  circumstances and other limited exceptions).

27  218.   Defendants' failure to appropriately and fairly compensate FASA for its out-of-

28  network claims has not only injured FASA, it has also injured the members – *i.e.*, the patients who

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

1   have obtained, and want to obtain, services from FASA – by exposing them to significant liability.

2   In under-pricing FASA's claims, Defendants have represented, in EOBs and other documents, that

3   the members are liable to FASA for amounts that should have been covered – *i.e.*, the amount of

4   the claim not paid but that Defendants should have paid if they used an appropriate methodology

5   to calculate UCR.  By systematically under-pricing FASA's claims, United and the other

6   Defendants are illegally transferring liability to the members for amounts that should be covered

7   by Defendants if the claims were priced and paid according to the UCR standard and a proper

8   UCR methodology.

9         219.    Moreover, the members are further injured because the plans regularly call for the

10   members to meet certain specified annual out-of-pocket expenditure thresholds – typically called

11   an annual deductible and an annual out-of-pocket maximum – in order to receive benefits or

12   increased benefit levels under the plans.  However, any amounts that the members must pay to

13   out-of-network providers because those amounts are above the allowable UCR amounts as

14   determined by United typically do not count toward these threshold expenditures.  Thus, by under-

15   pricing FASA's claims using inappropriate UCR methods, the Defendants effectively force the

16   members to pay far larger out-of-pocket costs than the members' plans require.  The result is

17   underpayment of FASA's claims by Defendants, greater liability for the members with respect to

18   FASA's claims, and potential greater liability for the members with respect to future claims by

19   FASA or another provider whose services the member engages.  The combined effect is a gross

20   distortion of the out-of-network benefit provisions set forth in the plans, and the practical

21   evisceration of the freedom to choose out-of-network providers that the plans promise to their

22   members – rights for which members pay increased premiums.

23                              **The Harm Caused To FASA**

24         220.    FASA is informed and believes that, and thereon alleges, that all of its claims

25   which were underpaid involve health benefit plans in which out-of-network benefits for ASCs are

26   intended to be paid in accordance with the UCR standard.  It is an abuse of their discretion and

27   fiduciary duties for Defendants to calculate out-of-network benefits according to in-network rates,

28   Medicare rates, OMFS rates, the flawed Ingenix Database, or some other methodology which does

not adequately compare FASA's charges with charges of similarly-situated providers in the same geographic area at the time.

221.    By using flawed and inappropriate methodologies to price and pay FASA's out-of-network, the Defendants have systematically and drastically under-priced and underpaid FASA for its services.

222.    Moreover, United intentionally led FASA to believe that benefits were reimbursed in accordance with the UCR standard.  As alleged above, when FASA contacted United to verify out-of-network benefits, United routinely led FASA to believe that benefits were available at a UCR rate.  Yet the Defendants rarely paid FASA's claims at the represented percentage of UCR, and instead improperly reimbursed FASA's claims based on one or more arbitrary, capricious, and improper methodologies such as those set forth above.

223.    Furthermore, the EOBs, appeal response letters, and other communications from United represented that benefits were in fact determined based on the UCR rate.  At no point did United adequately disclose its true pricing methodologies, which do not satisfy the UCR standard.

224.    As a result of Defendants' misrepresentations, omissions, and misleading statements, and their concealment of the true manner in which they reimbursed FASA's out-of-network claims, FASA was induced into agreeing to incur significant expenses in order to provide its services to Defendants' members.

225.    FASA suffers direct harm by incurring expenses to provide the services, and then is forced into the position of incurring further expenses seeking corrected reimbursements from Defendants and having to attempt to collect amounts from members that the members justifiably believe should be covered by their health benefit plans.  FASA is informed and believes that the members also reasonably expected that their health benefit plans, which purport to give them the freedom to choose out-of-network providers, would properly calculate and pay out-of-network benefits according to UCR.   FASA often is unable to collect balances from the members, thereby having to take a loss for its services.  FASA also suffers a loss on the costs of supplies, space, equipment, etc., that FASA expends to provide the services to Defendants members.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

226.     By falsely representing that the members are liable for amounts that the members in fact do not owe under the terms of their health benefit plans, and by forcing FASA to pursue improper amounts from the members, Defendants' illegal and improper actions also have harmed the relationships that FASA has with its patients, making it difficult for FASA to continue to operate its business.

227.     FASA is informed and believes that through the wrongful conduct set forth above, Defendants intentionally seek to ruin FASA's ability to compete outside United's "network," and seek to force FASA into accepting low in-network rates and/or agreeing to oppressive contract terms.

228.     As a further result of the Defendants' wrongful business practices, FASA is harmed by having to expend significant time and resources in trying to appeal Defendants' underpayments.

229.     FASA is informed and believes that the Health Plans typically require a benefit determination and claim appeal process that provides a full, meaningful, and independent review, and that affords plan beneficiaries and claimants broad rights to accurate, timely and substantive information regarding the reasons, rules, methodologies, terms, provisions and interpretations that underlie the benefit determinations.  The Defendants' false and/or misleading statements, acts of concealment and failures to disclose were knowing and intentional, and had the design and effect of preventing a full and meaningful evaluation and review of the grounds for initial benefit determinations and benefit determinations on review.  Defendants' failure to provide a full and fair review of FASA's claims and appeals rarely results in any additional payment.  The appeals are therefore rendered futile due to the Defendants' systematic misrepresentations, omissions and misleading statements intended to conceal the true methods that United uses to price FASA's claims.

230.     As fiduciaries and administrators of Health Plans, the Defendants occupied and continue to occupy a position of trust, by which they must accurately represent the terms and conditions of the plans, must disclose all material facts concerning how plan benefits are priced and determined, and must act in the interest of the plan and the plan's beneficiaries.  Nonetheless,

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  the Defendants either knew or recklessly disregarded the fact that the misrepresentations,

2  omissions, misleading statements and concealments described above were material, and that

3  FASA, as well as the Defendants' members, would and did detrimentally rely on such

4  misrepresentations, omissions, misleading statements and concealments when deciding to provide

5  services, and during the claims adjudication and appeal process.

6      231.   FASA's business and property has been injured as a proximate result of the

7  Defendants' conduct,  in that FASA provided services to members as a result of the Defendants'

8  misrepresentations, omissions and concealments about out-of-network benefits, and FASA has

9  been underpaid substantial sums for the services rendered to members in justifiable reliance on the

10  communications they received from the Defendants concerning pricing and payment of out-of-

11  network benefits.

12      232.   Not only were FASA and the members injured by Defendants' conduct, but

13  Defendants benefited by reducing the amounts payable for out-of-network, and retaining the

14  differential between the proper UCR-based reimbursement of FASA's claims and the amount

15  actually paid by Defendants in respect of those claims.

16

17  ### FIRST CLAIM FOR RELIEF

18  **Enforcement Under 29 U.S.C. § 1132(a)(1)(B)**
    **For Failure To Pay ERISA Plan Benefits**
19  **(Against All United Defendants and All ERISA Plan Defendants)**

20      233.   The allegations of the prior paragraphs of this Second Amended Complaint are

21  hereby repeated as if fully set forth herein.

22      234.   This cause of action is alleged by FASA for relief in connection with claims for

23  treatment rendered to members of an ERISA Plan.  This cause of action seeks to recover benefits,

24  enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B).  FASA has standing

25  to pursue these claims as assignee of the members' benefits under the ERISA Plans.  As the

26  assignee of benefits under the ERISA Plans, FASA is a "beneficiary" entitled to collect benefits

27  under the terms of the ERISA Plans, and is the "claimant" for purposes of the ERISA statute and

28  regulations.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

235.   ERISA authorizes actions under 29 U.S.C. § 1132(a)(1)(B) to be brought against the ERISA Plans as entities, against the ERISA Plans' administrators, and against other appropriate entities.  FASA is informed and believes that each of the ERISA Plan Defendants identified as an "ERISA plan" earlier in this Second Amended Complaint are all ERISA Plans. Therefore, these entities are proper defendants for this claim.

236.   FASA is informed and believes that each of the ERISA Plan Defendants identified as a "plan sponsor and/or plan administrator" earlier in this Second Amended Complaint are plan sponsors and/or designated plan administrators for the ERISA plans mentioned in the preceding paragraph.  Therefore, these entities are proper defendants for this claim.

237.   FASA is informed and believes that, with respect to each of the ERISA Plans at issue in this case that are Insured Plans, United is the  insurer, sponsor, and financially responsible payor, serves as its designated plan administrator, and/or serves as the named plan administrator's "designee."  Therefore, the United Defendants are proper defendants for this claim.

238.   FASA is informed and believes that, with respect to each of the ERISA Plans at issue in this case that are Self-Insured Plans, but which do not specifically designate a plan administrator, each of the United Defendants effectively controls the decision whether to honor or to deny a claim under the plan, exercises authority over the resolution of benefit claims, and/or has responsibility to pay the claims.  Therefore, each of the United Defendants is a proper defendant for this claim. The United Defendants also play a role as the *de facto* plan administrator for such plans. The United Defendants functioned and/or continue to function as plan administrators insofar as they have, among other things, provided plan documents to participants, received benefit claims, evaluated and processed those claims, reviewed and interpreted the terms of the plan, made initial benefit determinations, made and administered benefit payments, handled appeals of benefit determinations, and served as the primary point of contact for members and providers to communicate regarding benefits and benefit determinations.

239.   FASA is informed and believes that, with respect to each of the ERISA Plans at issue in this case that are Self-Insured Plans, and which designate one of the ERISA Plan Defendants as the plan administrator, each of the United Defendants effectively controls the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

1   decision whether to honor or to deny a claim under the plan, exercises authority over the

2   resolution of benefit claims, and/or has responsibility to pay the claims, and has functioned as a

3   co-plan administrator.  The United Defendants functioned and/or continue to function as plan

4   administrators insofar as they have, among other things, provided plan documents to participants,

5   received benefit claims, evaluated and processed those claims, reviewed and interpreted the terms

6   of the plan, made initial benefit determinations, made and administered benefit payments, handled

7   appeals of benefit determinations, and served as the primary point of contact for members and

8   providers to communicate regarding benefits and benefit determinations.

9        240.    At all relevant times, FASA was entitled to reimbursement under the ERISA Plans

10   in accordance with the UCR standard on each of the claims at issue in this litigation.  The United

11   Defendants and the ERISA Plan Defendants breached the ERISA Plans' benefits provisions by

12   under-pricing and underpaying FASA for the out-of-network services provided by FASA to the

13   members and covered under the ERISA Plans, and due to FASA as the assignee of the members'

14   out-of-network benefits.  As set forth more fully above, the breaches included failing to pay out-

15   of-network benefits under the plan pursuant to the UCR standard. The breaches also included,

16   among other things, interpreting and implementing the ERISA Plan terms in a way that

17   systematically was arbitrary and capricious, making material misrepresentations regarding the

18   manner in which out-of-network benefits are priced, making false representations that FASA's

19   out-of-network claims were paid based upon a comparison of FASA's charges with amounts

20   charged by similar providers for similar services or supplies, using improper methodologies to

21   miscalculate the UCR rate, systematically reducing benefits paid to FASA for its out-of-network

22   services, and failing to provide a benefit determination and appeal process that provides for a full

23   and meaningful review of benefit claims and determinations.

24        241.    FASA is deemed to have exhausted all administrative remedies available to it

25   because the United Defendants and the ERISA Plan Defendants failed to establish and follow

26   reasonable claims procedures or a full and meaningful review and appeal process, as required by

27   ERISA.  The United Defendants and the ERISA Plan Defendants have routinely failed to process

28   claims submitted by FASA in a manner consistent or substantially in compliance with ERISA

1  regulations.  *See* 29 C.F.R. § 2560.503-1.  Among other things, the United Defendants and the

2  ERISA Plan Defendants:

    (a)    failed to notify FASA of benefit determinations and review determinations within the required amount of time after receipt of the claim or appeal;

    (b)    failed to provide the specific reason or reasons for their benefit determinations or review determinations, including information concerning the flawed and inappropriate methods used for pricing FASA's out-of-network claims, and frequently provided inconsistent and conflicting explanations for the same benefit determinations;

    (c)    failed to make reference to the specific plan provisions on which their benefit determinations or review determinations were based;

    (d)    made materially false and misleading statements concerning their methods for determining reimbursement amounts, and refused to disclose the true internal rules, guidelines, protocols and criteria that were relied upon in making the benefit and review determinations;

    (e)    failed to provide FASA with a sufficient description of the ERISA Plans' review procedures;

    (f)    failed to provide review of appeals that did not afford deference to the initial benefit determination, and which was conducted by an appropriate named fiduciary of the plan who is independent of the person who made the initial benefit determination;

    (g)    denied FASA the right to appeal benefit determinations and/or employed policies designed to unduly obstruct, hamper, and delay the appeal of claims submitted by FASA, including, but not limited to, systematic reliance on inappropriate data, refusal to acknowledge provider appeals as appeals, requiring more than two levels of appeal, and characterizing required levels of appeal as discretionary or voluntary; and

    (h)    denied FASA's efforts to become sufficiently acquainted with the terms of the ERISA Plans, as well as the true methods used to reimburse FASA's claims, thereby rendering the administrative appeal a futile and meaningless endeavor.

22      242.  FASA also exhausted any administrative remedies available to it by pursuing

23  administrative relief before filing suit.  FASA's employees repeatedly sent appeal letters to United

24  challenging the benefit determinations and the amounts reimbursed to FASA, and made numerous

25  phone calls to United with respect to its claims.

26      243.  Exhaustion also would have been futile.  In light of the United's long-standing,

27  repeated and systematic refusal to provide anything more than a cursory and false and/or

28  misleading explanation concerning its true methods for calculating reimbursement of FASA's

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   claims, given United's ongoing and continued use of flawed and inappropriate methodologies to

2   underpay claims in a manner that fails to comply with the terms of the ERISA Plans and its own

3   representations, and considering United's repeated and systematic efforts to misrepresent and

4   conceal its methodologies and the fact that it did not reimburse FASA's claims in accordance with

5   the UCR standard, further exhaustion of the inadequate administrative remedies also would have

6   been futile and meaningless.

7        244.   By reason of the foregoing, FASA is entitled to past due benefits, future benefits,

8   declaratory relief, prejudgment interest, and attorneys' fees.  The Court should specifically declare

9   that FASA is entitled to have the United Defendants and the ERISA Plan Defendants:

10       (a)   compile a valid database of charges by FASA and other similar providers in
             the same geographic area (the distance that could reasonably be considered
11           appropriate for a member to travel in the same area);

12       (b)   calculate FASA's past and future benefits pursuant to a valid database that
             takes into account valid data and, in accordance with the UCR standard, the
13           rates charged by FASA and other similar providers for similar services in
             the same geographic area at the time;

14       (c)   determine the UCR rate for FASA's out-of-network services without
15           reference to discounted contract rates applicable to in-network providers;

16       (d)   determine the UCR rate for FASA's out-of-network services without
             reference to Medicare rates or schedules;
17
         (e)   determine the UCR rate for FASA's out-of-network services without
18           reference to the California OMFS fee schedule, other rates used for
             workers' compensation claims, or any other state-imposed fee schedule;
19
         (f)   pay the correct UCR amounts to FASA for past benefit claims that were
20           underpaid;

21       (g)   pay future FASA benefit claims using an appropriate methodology for
             determining UCR rates;
22
         (h)   issue new EOBs for past benefit claims, and correct EOBs for future benefit
23           claims, that are in compliance with applicable regulatory notice standards;

24       (i)   implement benefit claims and appeal processes that provide a full,
             meaningful and independent review of benefit determinations, and that are
25           consistent and substantially in compliance with ERISA regulations and the
             terms of the Health Plans; and
26
         (j)   cease and desist from employing policies and procedures designed to deny
27           or to unduly obstruct, hamper, and delay FASA's right to appeal the benefit
             determinations as to its submitted claims.
28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

### SECOND CLAIM FOR RELIEF

**Enforcement Under 29 U.S.C. § 1132(a)(2)**
**For Breach of Fiduciary Duty**
**(Against All United Defendants and All ERISA Plan Defendants)**

245.     The allegations of the prior paragraphs of this Second Amended Complaint are hereby repeated as if fully set forth herein.

246.     This cause of action is alleged by FASA, for itself, on behalf of the ERISA Plan members who received out-of-network services from FASA, and on behalf of the ERISA Plans themselves.  This is a claim pursuant to ERISA § 502(a)(2), 29 U.S.C. §1132(a)(2), which authorizes ERISA beneficiaries to bring a suit for appropriate relief under 29 U.S.C. § 1109.  In turn, 29 U.S.C. § 1109 provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

FASA has standing to pursue this claim as assignee of the members' benefits under the ERISA Plans.  As the assignee of benefits under the ERISA Plans, FASA is a "beneficiary" entitled to receive benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of the ERISA statute and regulations.

247.     United and each of the ERISA Plan Defendants served as a fiduciary for the ERISA plans at issue.  As fiduciaries, United and the ERISA Plan Defendants owed the ERISA Plans and the plan members and beneficiaries duties to act with undivided loyalty and prudence in the administration of the plans.

248.     United and each of the ERISA Plan Defendants breached their fiduciary duties of loyalty and prudence by engaging in the conduct described herein, including, but not limited to:

    (a)     systematically failing to disclose, misrepresenting and concealing its improper methodologies for reimbursing claims for out-of-network services;

    (b)     systematically failing to reimburse claims for out-of-network services according to an appropriate methodology for calculating UCR, as required by the plans and as represented to members and to FASA;

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

(c)     artificially depressing the determination of out-of-network benefits under the ERISA Plans;

(d)     knowingly using those improper methodologies and artificially depressed benefits to calculate and administer the benefit payments due to plan members and to FASA, as assignee of the members' plan benefits;

(e)     systematically failing to provide claims and appeal processes that provide a full, meaningful and independent review of benefit determinations; and

(f)     systematically shifting liability to the members for a greater portion of the services and a greater leval of out-of-pocket costs than the members would bear under the ERISA Plans if the services were appropriately reimbursed pursuant to the UCR standard.

249.    As a result of the wrongful conduct alleged herein, the ERISA Plans themselves and the members of the ERISA Plans have been damaged in that the benefits provided by the plans for out-of-network services were not calculated according to an appropriate methodology in conformance with the UCR standard, the terms of the plan, and the Defendants' representations, and as a result the plan members were required to pay larger out-of-pocket amounts under the ERISA Plans than they would if the reimbursements had been calculated according to a legitimate and proper UCR methodology, and the ability and right of plan members to receive services from providers outside of United's provider network, as contemplated and promised by terms of the ERISA Plans themselves, and as paid for by the members and the ERISA Plans, is impeded.

250.    Also as a result of the wrongful conduct alleged herein, FASA has been damaged in that it received lower reimbursement payments for the out-of-network services provided to the ERISA Plan members, lost patients who cannot afford to pay the inflated out-of-pocket costs resulting from the improper benefit determinations, was unable to collect the balance of its market-based charges, and suffered other injuries and damages.

251.    In light of the violations of the fiduciary obligations set forth herein, FASA, on behalf of itself, as assignee of the members' benefits, on behalf of the members of the ERISA Plans, and on behalf of the ERISA Plans themselves, seeks all appropriate relief, including the calculation and payment of out-of-network benefits pursuant to a legitimate and appropriate UCR methodology, restitution, interest, and declaratory and injunctive relief, which will inure to the benefit of the ERISA Plans themselves, the plan members, and FASA.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

## THIRD CLAIM FOR RELIEF

**Enforcement Under 29 U.S.C. § 1132(a)(3)**
**For Full and Fair Review Of Claims**
**(Against All United Defendants and All ERISA Plan Defendants)**

252.     The allegations of the prior paragraphs of this Second Amended Complaint are hereby repeated as if fully set forth herein.

253.     This cause of action is alleged by FASA for relief in connection with claims for treatment rendered to members covered by an ERISA Plan.  This is a claim pursuant to 29 U.S.C. § 1132(a)(3), to redress the failures by United and the ERISA Plan Defendants to comply with 29 U.S.C. § 1133, the implementing regulations set forth at 29 C.F.R. § 2560.503-1, and federal common law.  FASA has standing to pursue these claims as assignee of the members' benefits under the ERISA Plans.  As the assignee of benefits under the ERISA Plans, FASA is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of the ERISA statute and regulations.

254.     Pursuant to the ERISA, its implementing regulations, and the terms of the ERISA Plans themselves, FASA is entitled to certain procedural protections concerning the manner in which its claims are handled by ERISA fiduciaries, including the specific reasons for the denial or partial denial of claims, and a "full and fair review" of all denied or partially-denied claims.  *See* 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1.  FASA is informed and believes that the ERISA Plan Defendants delegated certain fiduciary claims handling responsibilities to United, including but not limited to, the duty to accurately represent and disclose information concerning pricing and reimbursement methods for out-of-network benefits, and the duty to provide a claims and appeal process that permits a full, meaningful and independent review of claims and appeals.  FASA is informed and believes that the ERISA Plan Defendants, in their capacity as plan administrators, retained certain fiduciary responsibilities with respect to claims handling.

255.     United and the ERISA Plan Defendants failed to comply with their fiduciary obligations to provide a "full and fair review" of denied or partially-denied claims pursuant to 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1 and the terms of the ERISA Plans.  Among other things, United and the ERISA Plan Defendants made representations to FASA concerning benefits

1102026.4                                                         CV10-04911 EJD

that were inconsistent with, or unauthorized by, the terms of the ERISA Plans, and they failed to disclose their methodology and other critical information relating to benefit determinations for claims and appeals submitted by FASA.

256.    When FASA contacted United to verify out-of-network benefits for plan members, United failed to truthfully and adequately disclose that the pricing of out-of-network benefits would be subject to the inappropriate methodologies described herein.  Instead, United led FASA to believe that the plan would price benefits in accordance with UCR.

257.    When FASA received EOBs from United, these notices failed to disclose the reasons for the benefit determinations with sufficient specificity.  Rather, they falsely stated that the benefits had been calculated based on the UCR standard, when in fact benefits had been priced pursuant to inappropriate methodologies, such as the "highest in-network rate" method, the MNRP method, or the OMFS method.  The EOBs also provided that benefits had been determined in accordance with the member's plan, but without any written explanation concerning the terms of the benefit plan or the methodology used to determine the amount of benefits.  Furthermore, the EOBs often failed to advise of and/or describe any appeal rights.

258.    When FASA attempted to appeal underpaid claims, United often refused to characterize the appeal as an appeal (stating, for example, that FASA's effort to dispute United's benefit determination did not constitute an appeal), denied that FASA had direct appeal rights, and/or required administrative hurdles designed to, or with the practical effect of, unduly obstructing and delaying the appeal process.  When United did accept appeals, it nonetheless still failed to disclose the reasons for the benefits determination with sufficient specificity and clarity.  In many instances, United, pursuant to authorization and discretion given it by the ERISA Plan Defendants, intentionally made false and/or misleading statements in letters responding to appeals concerning the manner in which benefits had been determined.  For example, rather than disclose that it calculated benefits based on Medicare rates, in-network rates, or workers' compensation rates, United falsely represented that it used the Ingenix Database to determine the UCR rate or calculated the reimbursement according to the appropriate UCR standard.  These systematically

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  insufficient and false and/or misleading statements made it impossible for FASA to obtain full and

2  fair review of its claims.

3       259.    In sum, United and the ERISA Plan Defendants denied FASA the opportunity for a

4  "full and fair review" of the underpaid claims, *inter alia*, by:

> (a)    failing to disclose the true methodologies and resources used to determine FASA's benefit payments;

> (b)    misrepresenting the manner in which claims were priced;

> (c)    misrepresenting that the claims were reimbursed by comparing FASA's charges with the charges of other similar providers for similar services in the geographic area at the same time, in accordance with the UCR standard, when in fact reimbursements for the claims were not based upon such comparisons;

> (d)    failing to disclose with specificity the reasons for both the adverse initial benefit determinations and the adverse determinations on appeal;

> (e)    failing to cite specific provisions of the plans that supported the determinations;

> (f)    failing to promptly and timely provide Explanation of Benefits and responses to appeals;

> (g)    failing to provide a review that did not defer to the initial adverse benefit determination, and which was based on proper methods for pricing reimbursements according to the UCR standard; and

> (h)    refusing to acknowledge the FASA's claimant status as assignee of the plans' members; and

> (i)    denying and/or obstructing FASA's  right to appeal claims through the plans' administrative procedures.

20       260.    FASA was harmed by the failure of United and the ERISA Plan Defendants to

21  provide a full and fair review in compliance with the requirements of ERISA, the ERISA

22  implementing regulations, the terms of the ERISA Plans, and/or the federal common law in that

23  FASA was unable to obtain timely and truthful disclosure of relevant and required information,

24  was denied an effective appeal process, was denied the opportunity for meaningful consideration

25  of its claims, and was denied the ability to collect the benefits due to FASA under the ERISA

26  Plans.

27       261.    The failure by United and the ERISA Plan Defendants to comply with the

28  procedural requirements of ERISA, the Secretary of Labor's implementing regulations, the terms

1   of the ERISA Plans, and/or the federal common law results in any administrative remedies

2   available to FASA being deemed exhausted.  *See* 29 C.F.R. § 2560.503-1(l).  Moreover, a claim

3   under ERISA Section 502(a)(3) to enforce the review requirements of ERISA Section 503 and the

4   claims procedures regulations does not require the exhaustion of administrative remedies.  *See*

5   *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1035 (9th Cir. 2005).

6        262.    By reasons of the foregoing, FASA is entitled to (1) a declaration by this Court that

7   the actions of United and the ERISA Plan Defendants as alleged herein are in violation of their

8   fiduciary duties and obligations under ERISA, (2) an injunction requiring United and the ERISA

9   Plan Defendants to comply with their fiduciary duties and obligations under ERISA, and (3) an

10  order requiring that United and the ERISA Plan Defendants provide FASA the full and fair review

11  of claims to which it is entitled for both past and future claims.  Specifically, the Court should

12  order United and the ERISA Plan Defendants to:

13         (a)    disclose the true methodologies used to determine payments for FASA's
            out-of-network benefit claims;

14

15         (b)    cease and desist from misrepresenting the manner in which FASA's claims
            are priced;

16         (c)    disclose with specificity the reasons for the initial adverse benefit
            determinations and the adverse benefit determinations on review, and cite

17              the specific provisions of the plans that support the determinations;

18         (d)    promptly and timely provide EOBs and responses to appeals;

19         (e)    provide a review process that does not defer to the initial adverse benefit
            determination;

20

21         (f)    acknowledge FASA's claimant status as the assignee of the plan members;
            and

22         (g)    afford FASA the unobstructed right to appeal claims through the plans'
            administrative procedures.

23

24

25  ### FOURTH CLAIM FOR RELIEF

26  **Violation of California Business & Professions Code §§ 17200 *et seq*.**
**(Against All Defendants)**

27       263.    The allegations of the prior paragraphs of this Second Amended Complaint are

28  hereby repeated as if fully set forth herein.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

264.   The United Defendants, for themselves and on behalf of the ERISA Plan Defendants and the Non-ERISA Plan Defendants, and, on information and belief, on the authority and with the knowledge of the ERISA Plan Defendants and the Non-ERISA Plan Defendants, have engaged in unfair, unlawful and/or fraudulent business acts and practices by, *inter alia*:

(a)   using arbitrary, capricious and improper methods to improperly under-price FASA's claims for out-of-network services;

(b)   submitting, accepting and using incomplete and scrubbed data to the Ingenix Database such that it could not accurately determine UCR for FASA's claims;

(c)   making false and/or misleading statements in EOBs, appeal response letters and other correspondence or materials concerning the manner in which United priced the reimbursement amount for FASA's out-of-network claims;

(d)   concealing and/or omitting material information in EOBs, appeal responses, and other correspondence or materials concerning the manner in which United determines the reimbursement amount for FASA's out-of-network claims;

(e)   inducing FASA to provide services to plan members on the basis of representations meant to lead FASA to believe that United would pay for the services at a particular percentage of UCR, when in fact United and the ERISA Plan Defendants routinely and systematically underpaid for FASA's services without regard to a proper determination of UCR;

(f)   routinely misrepresenting to FASA and the members the reasonable and customary amounts of out-of-network ASC services;

(g)   unduly obstructing and/or delaying FASA's ability to appeal United's benefit determinations;

(h)   for those Health Plans that are governed by the California Department of Managed Health Care – failing to correctly and accurately apply the criteria used to calculate UCR rates as set forth in Title 28 of the California Code of Regulations, section 1300.71(a)(3)(B), and by failing to comply with California Health and Safety Code § 1371 and 28 C.C.R. § 1300.71 by knowingly, among other things, engaging in an "unfair payment pattern," including, but not limited to, delaying payment of claims, reducing the amount of payment and/or denying payment of claims, failing on a repeated basis to pay uncontested portions of claims within the time period specified in Health and Safety Code §§ 1371 *et seq.*, and not paying reasonable and customary rates; and

(i)   systematically shifting liability to the members for a greater portion of the services and a greater leval of out-of-pocket costs than the members would bear if FASA's services were appropriately reimbursed pursuant to the UCR standard.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

265. This conduct by the United Defendants constitutes unfair, unlawful and/or fraudulent business practices under California Business and Professions Code § 17200, *et seq*. As a result of their acts of unfair competition, the Defendants have and continue to receive and retain monies that rightfully belong to FASA as compensation for rendering covered, medically necessary services to the members.

266. As a result of the United Defendants' acts of unfair competition, and as described herein, FASA has suffered injury in fact and has lost money or property in that, *inter alia*, FASA has been denied payment of amounts that are due to FASA for its out-of-network services when the reimbursement amount are calculated in accordance with a legitimate and proper UCR methodology. In addition, the Defendants' have acquired and/or retained such amounts by means of United's acts of unfair competition, and such unfair competition is likely to continue absent judicial intervention. This conduct threatens not only the economic well being and future viability of FASA and the members who assigned their benefits to FASA, but the health of the public.

267. California Business and Professions Code § 17203 provides that any court of competent jurisdiction may enjoin any person from engaging in unfair competition and restore to any person who is a victim of that unfair competition any money or property acquired thereby. FASA seeks restitution of an amount to be proved at trial, plus applicable statutory interest, which is the amount that United, and the ERISA Plan Defendants and the Non-ERISA Plan Defendants, are obligated to pay FASA for the services they provided to plan members. The Defendants should be specifically ordered to disgorge amounts which represent the difference between what Defendants paid FASA using the inappropriate methodologies for determining UCR, and FASA's total billed charges on past claims, which appropriately represent UCR. FASA also seeks an injunction prohibiting the United Defendants' ongoing conduct in using the inappropriate methodologies to under-price FASA's out-of-network claims, reduce payment, deny payment and/or delay payment to FASA for services provided to plan members. Furthermore, the injunction should force the United Defendants to correctly price FASA's past and future out-of-network claims by determining UCR based on appropriate UCR data and a methodology that meets the UCR standard; to cease and desist from its misrepresentations, misleading statements,

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1 material omissions, and concealments in its EOBs, appeal responses, claim status reports and other

2 communications; and to cease and desist from unduly obstructing and delaying FASA's ability to

3 appeal United's benefit determinations.

4      268.    FASA's legal remedies are inadequate in that the United Defendants' unfair,

5 unlawful and fraudulent conduct is ongoing, and repeated litigation to correct its ongoing actions

6 is inefficient for the parties and the Court.

7

8 **FIFTH CLAIM FOR RELIEF**

9 **Breach of Contract**
**(Against the United Defendants and All Non-ERISA Plan Defendants)**

10

11      269.    The allegations of the prior paragraphs of this Second Amended Complaint are

12 hereby repeated as if fully set forth herein.

13      270.    At the time that FASA rendered out-of-network services to each member who is a

14 member of a Non-ERISA Plan, a written contract – the Non-ERISA Plan – existed between

15 United, for itself and on behalf of the Non-ERISA Plans, each of the Non-ERISA Plan Defendants

16 and their respective members who obtained services from FASA, and between United, for itself

17 and on behalf of the Non-ERISA Plans, each of the Non-ERISA Plan Defendants and FASA as the

18 assignee of the members' benefits under the plan.

19      271.    FASA obtained a valid assignment of benefits from each member of the Non-

20 ERISA Plans to which FASA provided services.  United, for itself and on behalf of the Non-

21 ERISA Plan Defendants, and the Non-ERISA Plan Defendants, acknowledged, consented to,

22 and/or waived any objection to or limitation upon each such assignment of benefits.

23      272.    Under the terms of the Non-ERISA Plans at issue in this case and the assignments

24 of benefits obtained by FASA from each of the members of the Non-ERISA Plans to which FASA

25 provided services, United, for itself and on behalf of the Non-ERISA Plan Defendants, and the

26 Non-ERISA Plan Defendants were obligated to pay benefits under the Non-ERISA Plans to

27 FASA, as assignee of the members' benefits, for the health care services provided by FASA to the

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

103
SECOND AMENDED COMPLAINT

CV10-04911 EJD

1  members of the Non-ERISA Plans pursuant to the out-of-network benefit provisions of the Non-

2  ERISA Plans.

3       273.   The out-of-network benefit provisions of the Non-ERISA Plans provide that benefit

4  payments to FASA, as assignee of the members' benefits, be calculated in accordance with the

5  UCR standard.

6       274.   As set forth more fully above, United, for itself and on behalf of the Non-ERISA

7  Plan Defendants, and the Non-ERISA Plan Defendants failed to pay FASA for the health care

8  services rendered to the members of the Non-ERISA Plans as required by the terms of the Non-

9  ERISA Plans.

10       275.   The failure of United, for itself and on behalf of the Non-ERISA Plan Defendants,

11  and the Non-ERISA Plan Defendants to pay FASA constitutes a direct breach of the terms of the

12  Non-ERISA Plans.  The United Defendants and the Non-ERISA Plan Defendants breached the

13  provisions of the Non-ERISA Plans' by under-pricing and underpaying FASA for the out-of-

14  network services provided by FASA to the members and covered under the Non-ERISA Plans,

15  and due to FASA as the assignee of the members' out-of-network benefits.  The breaches also

16  included, among other things, interpreting and implementing the Non-ERISA Plan terms in a way

17  that systematically was arbitrary and capricious, making material misrepresentations and/or

18  misleading statements regarding the manner in which out-of-network benefits are priced, making

19  false and/or misleading representations that FASA's out-of-network claims were paid based upon

20  a comparison of FASA's charges with amounts charged by similar providers for similar services

21  or supplies, using improper methodologies and systems to miscalculate the UCR rate for FASA's

22  services, systematically reducing benefits paid to FASA for its out-of-network services, and

23  providing an arbitrary and capricious benefit determination and appeal process.

24       276.   On information and belief, the Non-ERISA Plan members and FASA, as assignee

25  of the members' benefits, satisfied all conditions and obligations under the Non-ERISA Plans,

26  including, but not limited to, paying all premiums owed, obtaining all necessary prior

27  authorizations for the procedures, if any, and submitting timely and complete benefit claims.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

277.    As a direct and proximate result of United's and the Non-ERISA Plan Defendants' breach of the Non-ERISA Plans, FASA has been damaged in an amount to be proven at trial, plus interest at the maximum rate permitted by law.

### SIXTH CLAIM FOR RELIEF

**Breath of the Implied Covenant of Good Faith and Fair Dealing**
**(Against All United Defendants and all Non-ERISA Plan Defendants)**

278.    The allegations of the prior paragraphs of this Second Amended Complaint are hereby repeated as if fully set forth herein.

279.    FASA is informed and believes that at the time that FASA rendered out-of-network services to each member who is a member of a Non-ERISA Plan, a written contract – the Non-ERISA Plan – existed between United, for itself and on behalf of the Non-ERISA Plan Defendants, each of the Non-ERISA Plan Defendants, and their respective members who obtained services from FASA,  and between United, for itself and on behalf of the Non-ERISA Plan Defendants, each of the Non-ERISA Plan Defendants and FASA, as the assignee of the members' benefits under the plan.

280.    Under California law, implied in every agreement is a duty that each of the parties will deal with each other fairly and in good faith.

281.    On information and belief, the Non-ERISA Plan members and FASA satisfied all conditions and obligations under the Non-ERISA Plans, including, but not limited to, paying all premiums owed, obtaining all necessary prior authorizations for the procedures, if any, and submitting timely and complete benefit claims.

282.    Each of the Non-ERISA Plan Defendants breached the terms of the Non-ERISA Plans by refusing to pay FASA, as assignee of the members' plan benefits under the plans, in accordance with the out-of-network benefit provisions of the Non-ERISA Plans for the medically necessary services that FASA rendered to the members.  The failure of United and the Non-ERISA Plan Defendants to pay FASA for was done willfully and in bad faith.  Accordingly, the failure of United and the Non-ERISA Plan Defendants to pay FASA the amounts owed to FASA

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  under the Non-ERISA Plans constitutes a breach of the implied covenant of good faith and fair

2  dealing.

3      283.   As a direct and proximate result of United's and the Non-ERISA Plan Defendants'

4  breach of the implied covenant of good faith and fair dealing, FASA has been damaged in an

5  amount to be proven at trial, plus interest at the maximum rate permitted by law.  FASA also seeks

6  exemplary punitive damages for United's and the Non-ERISA Plan Defendants' bad faith

7  violation of the implied covenant of good faith and fair dealing.

8

9                    **SEVENTH CLAIM FOR RELIEF**

10                   **Recovery for Services Rendered**
                     **(Against All Defendants)**

11

12     284.   The allegations of the prior paragraphs of this Second Amended Complaint are

13  hereby repeated as if fully set forth herein.

14     285.   While FASA is informed and believes that its claims against Defendants are

15  covered by the terms of the Health Plans, to the extent the claims alleged above for any reason do

16  not apply to the services at issue, FASA alleges in the alternative that Defendants are indebted to

17  FASA at the *quantum meruit* rate for the services rendered by FASA to the members.

18     286.   FASA provided medically necessary treatment to each of the members who

19  received health care services from FASA.  By authorizing FASA to provide health care services to

20  the members, by verifying the members' coverage under the Health Plan, by misrepresenting,

21  concealing and/or failing to disclose the true methodologies and practices by which FASA's

22  services would be and were reimbursed, and by other words and/or conduct, Defendants, on their

23  own behalf and/or as the agent of one or more of the other Defendants, requested that FASA

24  provide those services.

25     287.   Defendants received, accepted, used, enjoyed and benefited from FASA's valuable

26  health care services.  Defendants knew that the services were being provided to the members for

27  the benefit of Defendants, and Defendants promised to pay FASA for those services.

28

288.     As a result, each of the Defendants became indebted to FASA for the health care services rendered by FASA to the members.

289.     Each of the Defendants has failed and refused, and continues to refuse, to timely and properly pay FASA for the reasonable and customary fair market value of the services FASA provided to the members.  Instead, Defendants have decided to delay payment, deny payment, or pay whatever amount they arbitrarily, capriciously, and unilaterally decided was appropriate for such services, at rates far below the services' reasonable and customary fair market value.

290.     The reasonable and customary fair market value of the services provided by FASA to the members for the benefit of Defendants are FASA's billed charges for the services.

291.     FASA has demanded, on numerous occasions, that the Defendants pay for the health care services FASA has provided to the members, and has objected to the failure to timely and properly pay FASA for the services provided to the members.

292.     Accordingly, there is now due, owing and unpaid from the Defendants to FASA an amount to be proven at trial, plus applicable statutory interest.

**WHEREFORE**, FASA prays for and demands judgment against the Defendants as set forth above and as follows:

1.     On the First Claim for Relief under ERISA, past due benefits calculated in accordance with the UCR standard, prejudgment interest, attorneys' fees, and a declaration that FASA is entitled to have the United Defendants and the ERISA Defendants:

    (a)     compile a valid database of charges by FASA and other similar providers in the same geographic area (the distance that could reasonably be considered appropriate for a member to travel in the same area);

    (b)     calculate FASA's past and future benefits pursuant to a valid database that takes into account valid data and, in accordance with the UCR standard, the rates charged by FASA and other similar providers for similar services in the same geographic area at the time;

    (c)     determine the UCR rate for FASA's out-of-network services without reference to discounted contract rates applicable to in-network providers;

    (d)     determine the UCR rate for FASA's out-of-network services without reference to Medicare rates or schedules;

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

(e)     determine the UCR rate for FASA's out-of-network services without reference to the California OMFS fee schedule, other rates used for workers' compensation claims, or any other state-imposed fee schedule;

(f)     pay the correct UCR amounts to FASA for past benefit claims that were underpaid;

(g)     pay future FASA benefit claims using an appropriate methodology for determining UCR rates;

(h)     issue new EOBs for past benefit claims, and correct EOBs for future benefit claims, that are in compliance with applicable regulatory notice standards;

(i)     implement benefit claims and appeal processes that provide a full, meaningful and independent review of benefit determinations, and that are consistent and substantially in compliance with ERISA regulations and the terms of the Health Plans; and

(j)     cease and desist from employing policies and procedures designed to deny or to unduly obstruct, hamper, and delay FASA's right to appeal the benefit determinations as to its submitted claims.

2.      On the Second Claim for Relief under ERISA, for the benefit of the ERISA Plans themselves, the plan members, and FASA, declaratory and injunctive relief declaring that the United Defendants' and the ERISA Plan Defendants' actions as alleged herein are in violation of their fiduciary duties and obligations, requiring the United Defendants and the ERISA Plan Defendants to calculate and pay out-of-network benefits pursuant to a legitimate and appropriate UCR methodology, requiring the United Defendants and the ERISA Plan Defendants to provide restitution of and interest on any monetary amounts that have been acquired by means of Defendants' determination of UCR by use of methodologies that do not meet the UCR standard, and requiring the Defendants to cease and desist from:

(a)     failing to disclose, misrepresenting and concealing its improper methodologies for reimbursing claims for out-of-network services;

(b)     failing to reimburse claims for out-of-network services according to an appropriate methodology for calculating UCR, as required by the plans and as represented to members and to providers such as FASA;

(c)     artificially depressing the determination of out-of-network benefits under the ERISA Plans;

(d)     knowingly using those improper methodologies and artificially depressed benefits to calculate and administer the benefit payments due to plan members and to providers such as FASA, as assignee of the members' plan benefits;

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

(e) failing to provide claims and appeal processes that provide a full, meaningful and independent review of benefit determinations; and

(f) shifting liability to the members for a greater portion of the services and a greater leval of out-of-pocket costs than the members would bear under the ERISA Plans if the services were appropriately reimbursed pursuant to the UCR standard.

3. On the Third Claim for Relief under ERISA, a judicial declaration that the United Defendants' and the ERISA Plan Defendants actions as alleged herein are in violation of their fiduciary duties and obligations under ERISA, and an injunction requiring them to comply with such duties and obligations, including providing full and fair review of past and future claims without resort to the unlawful procedures described herein;

4. On the Fourth Claim for Relief under California Business & Professions Code § 17200, permanently enjoining Defendants from engaging in the unfair business practices complained of, and requiring Defendants to restore to FASA, and otherwise to disgorge, any money that has been acquired from FASA by means of Defendants' determination of UCR by use of improper methodologies, as well as any other unfair, unlawful and/or fraudulent business practices;

5. On the Fifth Claim for Relief, damages in an amount to be proved at trial of this matter, plus interest at the maximum rate permitted by law;

7. On the Sixth Claim for Relief, damages in an amount to be proved at trial of this matter, plus interest at the maximum rate permitted by law, plus exemplary punitive damages;

8. On the Seventh Claim for Relief, for restitution of the reasonable value of the health care services performed by FASA, and of the money and property which FASA has lost and which the Defendants have unjustly retained, in an amount to be proven at trial, plus interest at the maximum rate permitted by law;

9. For the awarding prejudgment interest and costs, including attorneys' fees; and

10. For the awarding of such other relief as the Court deems just and proper

1

## <u>DEMAND FOR JURY TRIAL</u>

2      Plaintiff requests a trial by jury.

3

4    DATED:  September 30, 2011          HOOPER, LUNDY & BOOKMAN, P.C.

5

6                                       By:  /s/ John P. McLoughlin
                                             JOHN P. MCLOUGHLIN
7                                       Attorneys for Plaintiff Forest Ambulatory Surgical
                                        Associates, L.P. doing business as Forest Surgery
8                                       Center

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1102026.4

CV10-04911 EJD
SECOND AMENDED COMPLAINT